**Evelyn Nell NORTON, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 19017.**

United States Court of Appeals
Ninth Circuit.

June 16, 1964.

Fitzgerald, Abbott & Beardsley, Marvin M. Grove, James C. Soper, Oakland, Cal., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Carolyn R. Just, Gilbert Andrews, Attys., Department of Justice, Washington, D. C., for respondent.

Before POPE and HAMLEY, Circuit Judges, and KILKENNY, District Judge.

HAMLEY, Circuit Judge.

This matter is before us on the petition of Evelyn Nell Norton to review a decision of the Tax Court of the United States pertaining to petitioner's income taxes for 1959. In that decision, reported in 40 T.C. 500, the Tax Court disallowed all but $3,178.05 of a claimed $13,631.05 deduction for theft loss, asserted under sections 165(a) and (c) of the Internal Revenue Code of 1954 (Code), 26 U.S.C. § 165(a) and (c). The taxpayer urges that the court erred in failing to allow the entire amount.

All of the facts were stipulated and are fully set out in the Tax Court decision. We state below only such facts as are necessary to a consideration of the questions raised on this review.

On May 8, 1958, Mrs. Norton entered into a contract with Donald G. Webb, doing business as Paddock Pools of East Bay, California, for the construction of a swimming pool. The contract set forth the specifications of the pool that was to be constructed. It also contained a warranty by the contractor that all construction material should be of good quality and that construction work should be done in a workmanlike manner. The total contract price was $9,446.42, and the contract provided that Mrs. Norton should pay Webb ten per cent as a deposit, sixty per cent on guniting, twenty-five per cent on placing of cast stone coping, and the balance on completion.

During the course of construction Mrs. Norton paid installments aggregating $8,112 upon Webb's representations that the work was being performed as provided in the contract and that the subcontractors and materialmen were being paid. On December 18, 1958, Webb ceased work upon the pool construction. At that time the pool was not completed in that certain accessories had not been installed and the fence and gate around the pool area, the heating and filter systems, and the electrical work were not complete.

The pool as constructed by Webb was defective in the following respects: (1) the plastic lining and concrete exterior of the pool were cracked; (2) the fill upon which the pool and the adjacent deck area were placed was not sufficiently compacted, the foundation of the pool contained one less concrete pier than was called for in the specifications, and the pool did not rest upon one of the concrete piers actually installed; and (3) the pool did not contain adequate steel reinforcing rods as required by the contract.

Webb failed to pay certain of his subcontractors, who then filed mechanics' liens against taxpayer's property in the aggregate sum of $4,160.94.

Mrs. Norton engaged a civil engineer to inspect the pool after Webb ceased work and was advised that in its then condition it constituted a hazard. The most economical method of rectifying the hazard consistent with Mrs. Norton's desire to install a swimming pool was to construct a steel pool on the existing pool site.

On or about December 22, 1958, Webb was adjudicated a bankrupt in the District Court of the United States in and for the Northern District of California, Northern Division. On July 14, 1959, Mrs. Norton filed a proof of claim in the bankruptcy proceeding in which she alleged that Webb was, at and before the filing of his petition for adjudication of bankruptcy, and still is, liable to her in the sum of $18,366.98.

In the proof of claim Mrs. Norton alleged that Webb's liability to her was founded upon the breach of a contractual obligation by Webb to perform services for her in the construction of the swimming pool. She alleged that Webb had failed in the performance of the contract without cause in failing and refusing to pay subcontractors and materialmen who furnished labor and material in connection with the construction of the pool. She further alleged that such work as Webb had done was not performed in a proper and workmanlike manner or in conformance with the plans and specifications. This proof of claim is still pending in the bankruptcy proceeding.

Because of Webb's failure to properly complete his contract, Mrs. Norton expended the following sums:

| | |
|---|---:|
| Satisfaction of mechanics' liens | $ 3,178.05 |
| Engineering fees | 341.00 |
| Difference between contract payments to Webb ($8,112) and fair market value of resultant product ($1,000) | 7,112.00 |
| Increased cost of construction of steel pool occasioned by obstruction of concrete pool, which cost was not more than would have been the expense of removing the concrete pool | 3,000.00 |
| | $13,631.05 |

On her income tax return for the year 1959, Mrs. Norton deducted the amount of $14,536.16 with the explanation that this was a theft loss. In his notice of

deficiency the Commissioner disallowed the claimed deduction. In the Tax Court proceedings which followed, Mrs. Norton conceded that the amount in excess of $13,631.05 was not properly deductible.

██ ██ The Tax Court premised its decision on the view that in determining whether a theft has taken place within the meaning of section 165(c) of the Code, resort must be had to the law of California, in which jurisdiction the loss took place. Mrs. Norton does not question this proposition, and in any event it is correct. Edwards v. Bromberg, 5 Cir., 232 F.2d 107, 111, 62 A.L.R.2d 565. Nor does Mrs. Norton challenge the Tax Court's holding that in order to constitute a "theft" within the meaning of the California law, and therefore within the meaning of section 165(c) of the Code, the representations made by Webb on which Mrs. Norton relied in making progress payments must have been not only false, but "knowingly and designedly" made.[1]

With reference to Webb's representation that the work was being performed according to the contract, the Tax Court held that while the representation was false, it was not shown to have been "knowingly and designedly" made. On the basis of that ruling the court concluded that the losses sustained by Mrs. Norton because of the defective construction of the pool and engineering fees and other expenses in connection therewith, were not shown to be theft losses, and a deduction therefor may not be allowed.

██ While the Commissioner on this review goes to great lengths to defend the holding that the representation

referred to above was not shown to be "knowingly and designedly" made, we do not understand that Mrs. Norton is here questioning that finding. Assuming, however, that we are mistaken in this, we hold that this finding is not clearly erroneous. It follows that no part of the loss sustained because of the defective construction of the pool, amounting to $10,453, may be regarded as a "theft" loss by reason of Webb's representation that the work was being performed according to the contract.[2] Whether it, or any part of it, may be regarded as a "theft" loss by reason of Webb's representation that the subcontractors and materialmen were being paid remains to be determined.

With regard to the latter representation, the Tax Court held that it was false and had been "knowingly and designedly" made. The court further stated that it had been stipulated that Mrs. Norton paid to Webb installments aggregating $8,112 upon Webb's representation that the subcontractors and materialmen were being paid.[3]

The court held, in effect, that to the extent that the subcontractors and materialmen had not been paid, this representation was false and "knowingly and designedly" made and the amount paid in reliance thereon was obtained by theft. The amount which had not been paid to the subcontractors and materialmen, and which Mrs. Norton had paid in satisfaction of mechanics' liens, was found to be $3,178.05. Accordingly, the Tax Court held, 40 T.C. at page 505, that Mrs. Norton sustained a theft loss in the amount of $3,178.05, " * * * since to this extent Webb's representations that the pay-

---

1. In so concluding, the Tax Court relied upon Cal.Penal Code, §§ 484 and 532, in which the words "knowingly and designedly" are used in defining, respectively, "theft" and "false pretenses."

2. These claimed losses, aggregating $10,-453, constituting all but $3,178.05 of the claimed deduction, are itemized above.

3. Actually, it was not stipulated that the entire $8,112 was paid in reliance upon

this one representation. This part of the stipulation reads:

"4. 'Webb' commenced construction of the swimming pool and during the course of construction petitioner paid installments aggregating $8,112.00 of the total contract price of $9,446.42, upon 'Webb's' representation that the work was being performed as per contract, and that the subcontractors and materialmen were being paid."

ment of the money received from petitioner was being used to pay subcontractors and materialmen were false and fraudulent."

Mrs. Norton predicates her argument against this result on the misconception that the Tax Court held that Mrs. Norton paid the entire $8,112 in reliance upon the false representation that Webb had paid the subcontractors and materialmen. As indicated above, the court held that she had paid only $3,178.05 in reliance upon that false representation, since the representation was found to be false only to that extent.

Starting with this misconception, Mrs. Norton indulges in the second misconception that the Tax Court, while recognizing that the entire $8,112 had been paid in reliance upon a false representation "knowingly and designedly" made, nevertheless held that only the portion of that sum which was shown not to have been paid out by Webb in constructing the pool could constitute a theft. Attacking this supposed Tax Court view, Mrs. Norton argues that Webb's crime was that of obtaining money by false pretenses and that, under California law, the entire amount received as a result of the false pretenses, and not just the part thereof which was misappropriated, was obtained by theft.

But, as pointed out above, the Tax Court did not hold that all of the $8,112 was paid in reliance upon a false representation of this kind. The Tax Court's process of reasoning was engaged in to determine how much of the $8,112 had been paid in reliance upon this false representation, not for the purpose of withholding, from theft classification, money paid in reliance upon a false representation.

Due to the way in which Mrs. Norton construed the Tax Court decision, as noted above, she has not directly contested that court's finding that the representation now under discussion was false and fraudulent only to the extent of $3,178.05. In any event we hold that it is not clearly erroneous. It follows that

the only theft loss which Mrs. Norton suffered is with respect to the unpaid materialmen. Accordingly, all loss resulting from Webb's defective workmanship, being associated with a representation not shown to be "knowingly and designedly" made, is not a theft loss for which she can claim a deduction.

One question remains to be considered. Mrs. Norton contends that she should have been awarded two times the $3,178.05 amount allowed by the Tax Court as a theft loss deduction, once because she had to pay that sum to satisfy the lien, and again because she had paid that amount to Webb for which no offsetting value was received. But if she has not received an offsetting value to this extent it is not because of Webb's representation that he had paid subcontractors and materialmen, but because of his representation, not "knowingly and designedly" made, that the work was being performed in accordance with the contract. As before indicated, losses sustained in connection with the latter representation could not give rise to a theft loss.

Affirmed.