DAVID K. CARLISLE and ALMA M. CARLISLE v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carlisle v. Commissioner
Docket No. 2189-73.
United States Tax Court
T.C. Memo 1976-314; 1976 Tax Ct. Memo LEXIS 89; 35 T.C.M. (CCH) 1428; T.C.M. (RIA) 760314; October 6, 1976, Filed *89 Petitioners' household goods were sold by a moving company for nonpayment of transportation and storage charges. A person representing petitioners in a contract action involving the purchase of a house misrepresented that he paid the moving charges from recovery of petitioners' escrow deposit when, in fact, petitioners lost the suit and the charges were not paid. Petitioners claimed a casualty loss as a result of the sale of their household goods. They further claimed $3,115 in business deductions. Respondent denied both claims. Held, petitioners are not entitled to a casualty loss deduction in 1971 for household furniture auctioned to satisfy moving indebtedness. Held,further, expenses designated as business related are not deductible under section 162 due to their personal nature or unsubstantiation. David K. Carlisle, pro se. Gregory A. Robinson, for the respondent. IRWIN
IRWIN, Judge: Respondent determined a deficiency in petitioners' income tax for 1971 in the amount of $6,004.07 and an addition to tax under section 6651 (a) [1] of $152.10.
*91 Petitioners have conceded the addition to tax for late filing of their 1971 income tax return. The issues before the Court are whether petitioners suffered a casualty loss during 1971 and, if so, in what amount, and whether petitioners are entitled to deduct $3,115 as business expenses in 1971. FINDINGS OF FACT Some of the facts have been stipulated and the stipulation of facts, together with the exhibits attached thereto, are found accordingly. David K. Carlisle (hereafter petitioner)and Alma M. Carlisle are husband and wife. At the time they filed their petition herein, they resided in Cos Cob, Conn. They filed their 1971 income tax return with the Andover Service Center, Andover, Mass., but not within the time prescribed by law. They reported their income on the cash method of accounting. In 1966 petitioner moved his family and household goods from Los Angeles, Calif., to Ohio, where petitioner had accepted a position with a state university.It was petitioner's initial understanding that his new employer would bear the costs of transferring his household goods. He soon learned that this was not true. The household goods, which had been consigned to Republic Van *92 and Storage Company (hereafter Republic), were awaiting redemption by petitioner in Dayton, Ohio. Prior to leaving California, petitioner entered a contract for the purchase of the home he was then occupying and put a deposit in escrow. Litigation arose from the purchase agreement and petitioner's deposit in escrow was held during the pendency of the litigation. During this period, petitioner's attorney in this litigation, Cornell Ridley, introduced petitioner to a nonlawyer named John Perry. The attorney told petitioner that Mr. Perry was his clerk and would assist him with the escrow litigation.Mr. Perry told petitioner he was not an attorney. Petitioner states that his attorney or Mr. Perry kept in contact with him on a regular basis by telephone and represented to petitioner that the litigation on the house was still being pursued and was going in favor of petitioner. The truth of the matter was that the house litigation had gone badly and that judgment was rendered against petitioner on June 28, 1967. Although the judgment did not require petitioner to pay any additional money to purchase the house, he lost his deposit money which the court awarded to the owners of the *93 property as rent on the house and to the bank for escrow charges. During 1967 petitioner was told by Mr. Perry, who by then had established an office of his own, that he had received favorable resolution to the litigation in the sum of $6,000. Mr. Perry also said that in anticipation of the settlement, a factor lent money to pay Republic and petitioner could soon expect delivery of the household goods, which had already been delayed six months. Petitioner was further advised not to contact Republic inasmuch as Mr. Perry had control of the situation. No power of attorney was executed with Mr. Perry by petitioner authorizing him to handle his household move.Mr. Perry was paid by petitioner to advise him in Los Angeles on various legal matters, including alleged litigation involving an appeal by the other parties to the escrow action. Meanwhile, Republic was still storing petitioner's household goods in a Dayton, Ohio, warehouse at petitioner's direction. It repeatedly contacted petitioner to request payment for the shipment of household goods. It also notified him by certified mail that, in the event the charges were not paid, the goods would be subjected to a warehouseman's *94 lien and could be sold to recover transportation charges of $1,649.74 and storage charges of $680. All requests from Republic to Mr. Perry and petitioner were answered by petitioner who insisted that payment had been made by Mr. Perry. In October 1971, Republic contacted the Interstate Commerce Commission (ICC) at petitioner's request to determine if his household goods could be received without full payment. ICC replied that they could not be. Petitioner called Merle F. Farren, whom he had originally contacted at Republic. He informed Mr. Farren that arrangements had been made for payment by his attorney, Mr. Perry. Republic made serious attempts to locate Mr. Perry to no avail. Upon informing petitioner of this, Mr. Farren advised petitioner that if he did not pay his accrued transportation and storage bill of approximately $2,300, the household goods would be liquidated by Republic in satisfaction of the indebtedness. Subsequent conversations between Republic and petitioner were futile. After postponing auction for over a year to guarantee payment was not forthcoming, Republic sold petitioner's household goods on May 8, 1968, for $997.50. Petitioner had insured these *95 goods with Republic for $7,000. The proceeds did not cover the transfer and storage charges, but Republic decided, according to company policy, that any attempt to secure a legal remedy against petitioner would not be in the company's best interests. In connection with the above, petitioner deducted $550 on his 1968 return as a loss of business property from the auction sale. In 1970 petitioner filed a claim for an additional deduction in 1968 relating to the alleged casualty loss in the amount of $2,856. In 1971 the 1968 and 1969 returns of the petitioners were examined by respondent, in addition to the 1970 claim. The claims were disallowed by respondent. Petitioner then claimed a casualty loss of $19,185 on his 1971 return for these same household goods, designating this amount as carried forward from 1969. In 1971 petitioner claimed business deductions of $300 for legal fees, $495 for business car expenses, $52 for travel and entertainment expenses, $27 for supplies and $2,241 for maintenance of a home office. Respondent disallowed these deductions in full. OPINION Petitioner has conceded that an addition to tax under section 6651(a) applies due to late filing of *96 his 1971 income tax return. The remaining issues are (1) whether petitioner suffered a casualty loss during 1971 and, if so, in what amount; and (2) whether petitioner is entitled to deduct $3,115 as business expenses in 1971. During 1966 petitioner moved from California to Ohio and had his household goods transported and stored there. Prior to this move he was involved in litigation over the purchase of the home he was then occupying in California and an escrow deposit. This suit was still pending at the time of his move to Ohio and was decided against petitioner in 1967. Petitioner was represented by counsel in the suit who introduced him to a nonattorney clerk in his office named John Perry with whom petitioner later consulted in various legal matters. Petitioner was aware of Mr. Perry's non-attorney status. Mr. Perry misrepresented that the escrow part of the suit had been decided in petitioner's favor and that this money had been used to pay Republic Van Lines Moving Company for transportation and storage charges on petitioner's household goods.Petitioner informed Republic, who made serious attempts to locate Mr. Perry to no avail. Republic informed petitioner of this *97 but subsequent conversations between the two were futile.After postponing auction for over a year to guarantee payment was not forthcoming, Republic sold petitioner's goods in 1968 for $997.50. Petitioner had insured these goods with Republic for $7,000. Petitioner claimed a casualty loss of $19,185 on his 1971 tax return as the fair market value of his household goods, which amount he designated as a carry forward from 1969. The propriety of this deduction is in issue. Section 165(c)(3) allows deductions for losses not connected with trade or business if they arise from "fire, storm, shipwreck, or other casualty, or from theft * * *." [Emphasis supplied.] A casualty is an event due to some sudden, unexpected or unusual cause, such as fire, storm or shipwreck. Fay v. Helvering,120 F. 2d 253 (2d Cir. 1941); United States v. Rogers,120 F. 2d 244 (9th Cir. 1941). Respondent contends that there was no casualty because the household goods were forfeited due to nonpayment of transfer costs and as a result of a premeditated auction sale. We concur *98 since this loss cannot be considered unexpected, accidental or sudden as required in applying the term casualty. Petitioner maintains that the loss of his household goods arose from theft on the part of John Perry, who was then acting as petitioner's attorney and who had misrepresented both the status of the escrow suit and payment to Republic for household moving costs. Petitioner claims Mr. Perry's actions constituted theft because he solicited and accepted money for fees and litigation expenses (petitioner testified Mr. Perry told him the owners and bank appealed the escrow judgment and as a result petitioner retained his services) and then utilized this money for his own purposes, thereby depriving petitioner of his money permanently. Petitioner further claims that but for the misrepresentation by John Perry, the household goods would not have been sold. Using this rationale, petitioner deducted $19,185 as the fair market value of auctioned household goods. This value was predicated on petitioner's claim that the accounting of goods by Republic was incomplete and the value received at auction was incomparable to actual value or even the insurance value placed on the goods. *99 For tax purposes the term "theft" includes, but is not limited to, larceny, embezzlement, and robbery. Section 1.165-8(d), Income Tax Regs. A theft loss is deductible, regardless of conviction or prosecution of the alleged thief, as long as it is an illegal taking of property under the law of the state wherein the particular loss occurred. Evelyn Nell Norton, 40 T.C. 500 (1963); Michelle Monteleone,34 T.C. 688 (1960). According to section 484 of the California Penal Code and the cases decided thereunder, theft is the taking of money or property from another upon false representations or pretenses. [2]People v. Carter,131 Cal.App. 177, 21 P.2d 129 (1933). Petitioner's position is that Mr. Perry, with intent to cheat or defraud by false pretenses, obtained money from him and misrepresented the status of his household goods, thus preventing them from being delivered. *100 We cannot agree with petitioner that the misrepresentations of Mr. Perry were the proximate cause of petitioner's household goods having been auctioned. First, since Mr. Perry was not an attorney, a fact with which petitioner was well aware, an attorney-client relationship giving rise to unquestioning reliance is not present. Secondly, even if petitioner had reasonably relied on Mr. Perry's representations, his loss would be limited to a direct loss from Mr. Perry's misrepresentations. Norton v. Commissioner,333 F.2d 1005 (9th Cir. 1964), affg. 40 T.C. 500 (1963).In this regard petitioner introduced a check for $150 dated August 14, 1966, to cornell Ridley, presumably for fees in the house purchase action, and one for $187.50 dated July 8, 1968, payable to John Perry. Although this latter date is subsequent to the date of auction, Mr. Perry was handling several matters for petitioner both before and after auction date and there is no evidence to show whether payment to Mr. Perry was for acts relating to household goods or other maters. Third, petitioner's judgment in relying on Mr. Perry in the face of continuous evidence to the contrary and *101 without any corroboration of his position can well be questioned. Mr. Farren of Republic repeatedly informed petitioner that his costs were not paid. Republic diligently investigated petitioner's claim of payment and the whereabouts of Mr. Perry. It deliberately postponed auction of petitioner's household goods to satisfy his indebtedness for over a year in an earnest effort to permit petitioner every opportunity to prove otherwise. On the other hand, petitioner doggedly asserted his position, not even requesting a receipt of payment to Republic from Mr. Perry, with whom he kept in contact, to ensure his posture was well taken. He neither submitted a claim to his insurance company nor a reprot to the police. He further misrepresented Mr. Perry's status as an attorney when he had not ascertained that Mr. Perry had attained that status.Petitioner's fallacious assumptions alone cannot provide a basis for reasonable business dealings with others.Fourth, Mr. Farren, who was involved in the auction of petitioner's household goods, testified that he could not understand petitioner's failure to make an effort to redeem his goods on his own, particularly since petitioner indicated the *102 goods were worth much more than the outstanding charges. In conclusion, petitioner's failure to act reasonably under the circumstances ultimately caused the auction. Clearly this is neither a casualty nor a theft loss within the meaning of section 165(c)(3). Finally, a casualty loss is usually deducted in the year it occurred and a theft loss in the year it is discovered. Section 1.165-1(d), Income Tax Regs. In this case the auction was held in 1968, petitioner testified he was aware of the loss in 1969 and the casualty was claimed in 1971 as a carryover loss. Even if we assume petitioner suffered a qualifying casualty or theft loss, that loss was not available as a carryover to 1971. For purposes of a carryover loss, section 172 provides that a net operating loss (which includes section 165(c)(3) casualty and theft losses; see section 1.172-3(iii), Income Tax Regs.) sustained after 1957 is carried forward only to the extent it exceeds the sum of the income for each of the three immediate preceding years of the taxpayer. Petitioner *103 has failed to include a detailed schedule showing the computation for this deduction as required by section 1.172-1(c), Income Tax Regs. Petitioner's narrative, which was attached to his 1971 income tax return, provides no basis for the carryover loss. We turn next to the propriety of various business expenses claimed by petitioner in 1971 as deductions under section 162 of the Code. As to the home office expense, for which petitioner deducted $2,241, we must decide this issue according to the recent decision of this Court in Joel A. Sharon,66 T.C. 515 (1976). Sharon held that in-home office expenses are personal and nondeductible unless the office constitutes a place of business. Use of an extra room which is incidental to the residential use of the home is insufficient to qualify for a section 162(a) deduction. Petitioner contends that he had been engaged as a consultant in years prior to 1971 and was intermittently attempting, during the year at issue, to establish an independent consulting practice in his home for the future. The *104 facts indicate that petitioner was fully employed in 1971. Thus, the work he claims to have done at home for his employer is incidental since an office at his place of business was available to him. See Sharon,supra. Petitioner also used the room to advise people gratuitously regarding certain social work, to serve as a guest room, and to conduct personal affairs. The former is not a business activity as petitioner had no expectation of compensation for these social duties; the other uses are strictly personal and nondeductible expenditures. Petitioner earned $200 in 1971 as a consultant for a Government agency and maintains he worked in his home office for this purpose. Evidence introduced relating to petitioner's consulting activities in other years indicates he usually received $100 per day for such work. If this is true for 1971, petitioner was paid for two days' work. With respect to this consulting work, petitioner must prove not only what part of the residence was used for business purposes, but also the portion of time it was so used. International Artists, Ltd.,55 T.C. 94 (1970). Petitioner has not met his burden of *105 proof on the amount of time used for this business purpose. Accordingly, we sustain respondent's disallowance of a home office deduction. Petitioner further deducted $495 as business car expenses. On his Peugeot he deducted ten cents a mile for business use and on his Chrysler he deducted actual expenses of $393.Respondent correctly pointed out at trial that both methods may not be used simultaneously. Rev. Proc. 70-25, 1970-2 C.B. 506. It is also respondent's contention that petitioner should not be entitled to deduct any of his automobile mileage because he has not established the amount of miles driven for business. We cannot ignore the record-keeping requirements of section 162 applicable to local travel expenses.Petitioner has not established the amount of ordinary and necessary business use of the cars nor corroborated any mileage figures as a business expense. Furthermore, petitioner testified at trial that the majority of his automobile expenses were personal in anture during 1971, yet he deducted 50 percent of the expense of the Peugeot and 75 percent of the expense of the Chrysler on his income tax return. While he has presented cancelled checks in an *106 effort to establish business expenditures, petitioner is unable to delineate which checks are for personal use and which are for business use. Because petitioner has failed to meet his burden, we have no choice but to sustain respondent's disallowance. Petitioner also deducted $52 as travel and entertainment expenses.While petitioner's motives might have been business related, he failed to consider the impact of section 274. The purpose of this section is to disallow deductions otherwise permitted under section 162 when the additional requirements imposed by section 274 are not met. They include precise record-keeping requirements (i.e., amount, time, place, business relationship and purpose) to corroborate any business use deduction. Petitioner testified he kept a calendar but neither produced it nor any type of information required under sections 162 or 274. The statutory language is clear and the deduction for travel and entertainment must be denied.
With regard to legal fees for which petitioner claimed a $300 deduction, we find that this alleged business expense was neither fully substantiated nor satisfactorily explained. For similar reasons of unsubstantiation we also *107 sustain respondent's disallowance of $27 for supplies. In conclusion, we find that petitioner did not suffer a deductible casualty or theft loss during 1971. We also find the expenses designated by petitioner as business related are nondeductible because of their personal nature or lack of substantiation. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩
2. Sec. 484. Theft defined Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which had been entrusted to him, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft. * * * For the purposes of this section, any false or fraudulent representation or pretense made shall be treated as continuing, so as to cover any money, property or service received as a result thereof, and the complaint, information or indictment may charge that the crime was committed on any date during the particular period in question.* * *↩