**W. Sam EDWARDS, Administrator of the Estate of Marion H. Allen, Deceased, former Collector of Internal Revenue, Appellant,**

v.

**Arthur C. BROMBERG and Estate of Alice B. Bromberg, Deceased, Arthur C. Bromberg, Executor, Appellees.**

**No. 15791.**

United States Court of Appeals
Fifth Circuit.

April 12, 1956.

Grant W. Wiprud, Atty., Dept. of Justice, Washington, D. C., H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Atty., Dept. of Justice, Washington, D. C., Frank O. Evans, U. S. Atty., Macon, Ga., Lee A. Jackson, A. F. Prescott, Walter Akerman, Jr., Attys., Dept. of Justice, Washington, D. C., Floyd M. Buford, Asst. U. S. Atty., Macon, Ga., for appellant.

Charles P. Bagley, Atlanta, Ga., for appellees.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

The suit, based on timely filed claims for refund, was brought to recover income taxes overpaid for the years 1948 and 1949, in the respective amounts of $14,293.62 and $775.72.

The claim was that the taxpayer had suffered losses from theft deductible under Sec. 23(e) (3)[1] in excess of $62,500 in 1948 and of $1550 in 1949, at the hands of one Goldberg who, having received money from him under the fraudulent pretense that it would be bet on a horse race or races, had embezzled the money and converted it to his own use.

The collector's representative, contenting himself with putting plaintiff on his proofs, made no special defense.

On the issues thus joined, the cause was tried to the court without a jury on the record made up of the lengthy testi-

---

[1]. Internal Revenue Code of 1939:
"§ 23. Deductions from gross income.
"In computing net income there shall be allowed as deductions:
\* \* \* \* \*
"(e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
\* \* \* \* \*

"(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwrecks, or other casualty, or from theft. No loss shall be allowed as a deduction under this paragraph if at the time of the filing of the return such loss has been claimed as a deduction for estate tax purposes in the estate tax return."
\* \* \* \* \*
26 U.S.C.1952 ed. Sec. 23.

mony of plaintiff, the brief testimony of plaintiff's lawyer, a certified public accountant, and a stipulation [2] as to plaintiff's net income for the years 1948 and 1949, and as to the judgment to be entered in named contingencies.

The district judge, finding and concluding [3] that plaintiff was entitled to

2. "Stipulation

"It is hereby stipulated and agreed by and between the parties hereto, by their undersigned counsel, that for the purposes of this proceeding the following facts are to be taken as true and correct:

(1) The net income of plaintiffs subject to tax for the year 1948 and prior to the deduction of any losses sought to be deducted in this proceeding is $43,222.47.

(2) If the court finds that plaintiffs are entitled to deduct losses equal to or in excess of said amount of $43,222.47 for the year 1948, then the court may enter judgment for the plaintiffs for 1948 in accordance with the demands of the complaint.

(3) Plaintiffs reported $450 of dividends received from Federal Savings & Loan Association in their income tax return for 1949.

(4) If the court finds that plaintiffs are entitled to deduct losses of $1,550.00 for the year 1949, and finds that the deposits in Federal Savings and Loan Associations upon which said dividends of $450 were received were made prior to Mar. 28, 1942, then the court may enter judgment for the plaintiffs for 1949 in accordance with the demands of the complaint."

3. "Between March 23 and July 16, 1948, one Sam Goldberg, alias 'Jimmy Jones', by fraudulent misrepresentations induced the plaintiff to part with sums in excess of $50,000. Representing himself to be the son of Ben Jones, the Calumet stables trainer, Goldberg induced the plaintiff to send him various sums to be added to a pool which was to be bet on a benefit race, the winner of which was allegedly predetermined. According to Goldberg's misrepresentation, the race was being run for the benefit of the widow of a Calumet jockey who had recently drowned. The plaintiff was told that a $200,000 pot would be wagered at odds of 15 to 1 and the jockey's widow would receive most of the winnings, with the balance to be divided among the contributors. Goldberg represented that the race was being run with the permission of the State Racing Commission. In fact, all of the representations of Goldberg were false. No such race was planned or held, nor was the money ever wagered. It was retained by Goldberg for his own personal use. The plaintiff

was misled by these misrepresentations and would not have parted with his money but for the misrepresentations. The plaintiff has not been reimbursed for any of these losses by insurance or otherwise.

"During August, 1948, plaintiff sent Goldberg, or others acting for him, sums equalling $10,000, which plaintiff understood were to be wagered on a race. He was later informed that the money was lost. It does not appear whether there was such a race or whether the money was actually wagered. The evidence, however, does disclose that the plaintiff would not have sent Goldberg $10,000 except for his mistaken belief that he was dealing with 'Jimmy Jones' whom he felt to be reliable.

"In Sept., 1948, Goldberg, as 'Jimmy Jones' misrepresented to plaintiff that he was starting a new pool to be wagered on a 'fixed' race. Relying on this misrepresentation the plaintiff sent Goldberg $2500.

"In January, 1949, plaintiff, again relying on misrepresentations of Goldberg, sent Goldberg $550. Plaintiff had received tips on two races in return for one-half his winnings. The plaintiff did not make the bets and it developed that had such bets been made, plaintiff would have won $2,000. Goldberg told plaintiff he had paid two jockeys $550 to insure this victory. Plaintiff reimbursed Goldberg the $550 in order to settle the $1,000 claim by Goldberg. It is not clear from the evidence whether or not Goldberg paid the jockeys but there is ample evidence to the effect that the plaintiff would not have sent the money but for the misrepresentation of his identity by Goldberg."

"In January, 1949, Goldberg, again representing himself as Jones, requested Plaintiff to send him $1000 to purchase a car, so that he might travel to Miami where he hoped to recoup Plaintiff's losses for him. Relying on the misrepresentation, plaintiff sent Goldberg $1000.

"All of the aforesaid transactions were part of a swindle by Samuel Goldberg and resulted in losses by the plaintiff, none of which have been reimbursed.

"No actual scheme for fixing races ever existed. The plaintiff was not a part of or co-conspirator in an actual scheme which could be said to contravene

**110**

recover, entered judgment accordingly, and the collector's administrator has appealed.

Here, urging upon us that the district judge erred, in holding that the taxpayer is entitled to deductions for theft losses under the invoked section with respect to sums which he turned over to Goldberg, in 1948 and 1949, and in entering judgment accordingly, appellant insists that the judgment must be reversed and here rendered for him.

As developed in his argument, this contention takes three forms. One is that the evidence of plaintiff does not make out a case of losses by theft but only one of losses from swindling and that the invoked section contains no provision for deducting these. Another is that in the act of parting with his money, plaintiff Bromberg was himself a party to, and engaged in, a swindling scheme, and that recovery is forbidden by considerations of public policy, as well as the consideration that a suit for moneys wrongfully had and received through a wrongful tax exaction is based

upon equitable principles and equity will not aid a swindler. A third point not made below is that the taxpayer had the burden and made no attempt to discharge it, of showing that he had tried to and could not recover his losses.

The taxpayer meets each of these grounds head on with the insistence that none of them is well taken. In addition he asserts of the third that, not made below, it may not be made here.

For the reasons hereafter stated, we agree with taxpayer throughout. We reject appellant's first claim that the loss was not within the theft deduction provided by Sec. 23(e) on reason and on authority. We reject it on reason because the word "theft" is not like "larceny", a technical word of art with a narrowly defined meaning but is, on the contrary, a word of general and broad connotation, intended to cover and covering any criminal appropriation of another's property to the use of the taker, particularly including theft by swindling, false pretenses, and any other form of guile.[4] We reject the contention

sharply defined public policy of the State or Nation.

"In 1949 the plaintiffs received $450 in dividends from Federal Savings & Loan Associations. These dividends were paid to plaintiffs on account of deposits made by them prior to March 28, 1942."

"Conclusions of Law.

"The Court has jurisdiction of the parties and subject matter of this action.

"Exhibits Nos. 23 to 29, 38 to 40, which were offered at the trial, were admissible in evidence and have been considered.

"The losses sustained by the plaintiffs constituted losses from theft under the law of Georgia.

"The losses resulting from theft were properly deductible under Sec. 23(e) (3) of the Internal Revenue Code of 1939.

"There is no provision in Sec. 23(e) (3) of the Internal Revenue Code which would permit disallowance of a deduction on the ground that its allowance would frustrate public policy.

"The dividends received from Federal Savings & Loan Associations were not taxable income to the plaintiffs."

4. This accords with the definition in Webster's New International Dictionary and in Vol. 3, Bouvier's Law Dictionary, Rawles Third Revision, 3267, as "a pop-

ular term for larceny. It is a wider term than larceny and includes other forms of wrongful deprivation of property of another * * * acts constituting embezzlement or swindling may be properly so called." Cf. Vol. 41, Words and Phrases, Theft, pp. 480 to 486. Many authorities are collected showing that the term "theft" has wide meaning, including the obtaining of property by swindling, false pretenses and other tricks. See also the great number of cases to the same effect in the Cumulative Pocket Part. In Cox v. World Fire & Marine Ins. Co., Mo.App., 239 S.W.2d 538, 540, it is said: " 'Theft' " is an " 'Act of stealing; * * * the felonious taking and removing of personal property, with the intent to deprive the rightful owner of it; * * *.' 'A popular term for larceny [but] a wider term than larceny and includes other forms of wrongful deprivation of another [such as] embezzlement or swindling.' " In People v. Jones, 36 Cal.2d 373, 224 P.2d 353, 355: "Crimes of larceny, embezzlement, obtaining money by false pretenses and kindred offenses are now all included under the designation of theft, * * * but the elements of the several offenses have not been changed."

on the authority of Alison v. United States, 344 U.S. 167, 73 S.Ct. 191, 97 L. Ed. 186, holding that theft includes embezzlement, and of Morris Plan Co. v. Commissioner, 42 B.T.A. 1190; Muncie v. Commissioner, 18 T.C. 849; Miller v. Commissioner, 19 T.C. 1046; Earle v. Commissioner, 2 Cir., 72 F.2d 366; and Borden v. Commissioner, 2 Cir., 101 F. 2d 44. In fact there are no decisions to the contrary. Under this line of decisions it has been long and well established that whether a loss from theft occurs within the purview of Section 23(e) (3) of the Internal Revenue Code of 1939 and the corresponding provisions of prior acts, depends upon the law of the jurisdiction where it was sustained and that the exact nature of the crime, whether larceny or embezzlement, of obtaining money under false pretenses, swindling or other wrongful deprivations of the property of another, is of little importance so long as it amounts to theft.

■■ His second point is, we think, equally without merit for the reason given by the district judge, that there was in reality no scheme to defraud others to which taxpayer was a party. There was only the fraudulent pretense of Goldberg, the thief, that there was and the use of that fraudulent pretense to obtain custody and control of taxpayer's money ostensibly as agent or joint adventurer with him but really with the purpose, which was later given effect, of depriving the taxpayer of it by felonious appropriation to his own use. In Akers v. Scofield, 5 Cir., 167 F.2d 718, we held that a swindler could not claim that the title to money he obtained by theft and false pretenses had not passed to him so as to make the money taxable to him as income, just as it was held as to Goldberg that he was liable for income taxes on the money he obtained from the taxpayer in this case. That case does not at all support, it does not even deal with appellant's contention here, that because of taxpayer's acceptance of and willingness to go along with Goldberg's proposition, the taxpayer is deprived of the deduction which without qualification the statute affords him. The argument advanced by the collector, based upon the claim that public policy defeats the deductions, we think is Pecksniffian. The United States, recognizing the transaction as resulting in income to the thief prosecuted him criminally for failing to report the money obtained thereby. It would, we think, be illogical in the extreme to deny the taxpayer the right to claim a deduction with respect to the money which the government taxed to Goldberg as his income and for the nonpayment of income taxes on which it prosecuted him.

■ Finally, we are in no doubt that taxpayer is right with respect to the third point, that in order for a taxpayer to claim a deduction for a loss from theft, he must show that he has made an effort to and cannot obtain restitution. The statute makes no such requirement, and when the nature of the matter dealt with, thieving and thievery, is considered, it seems clear, we think, that only if there were a specific provision imposing this requirement, would a court be authorized to hold that it exists. Cf. Earle v. Commissioner, 2 Cir., 72 F.2d 366.

The judgment was right. It is affirmed.

RIVES, Circuit Judge (dissenting).

In permitting the deduction of losses from "theft", I.R.C.1939, Sec. 23(e) (3), I.R.C.1954, Sec. 165(c) (3) and (e), I do not think that Congress intended to make the inquiry so broad as to include all forms of dishonesty, cheating, and swindling. See 41 Words and Phrases, Theft, p. 480 et seq.

The taxpayer turned over the money to Goldberg for the purpose and with the intent that it should be used to defraud other persons who might bet their money upon horses in ignorance of the fact that the races had been fixed. Now when he finds that, instead of defrauding others, he himself is the party defrauded, he is in no position to call on the Government

to bear a part of his loss. Stone v. White, 301 U.S. 532, 534, 57 S.Ct. 851, 81 L.Ed. 1265; Commissioner v. Heininger, 320 U.S. 467, 474, 64 S.Ct. 249, 88 L.Ed. 171.

Finally and certainly, under the statute, to authorize deduction, the taxpayer must establish not only the theft but the loss therefrom. Alison v. United States, 344 U.S. 167, 170, 73 S.Ct. 191, 97 L.Ed. 186.

I, therefore, respectfully dissent.