Norbert Lloyd Enrick and Mary Lou Enrick v. Commissioner.
Enrick v. Commissioner
Docket No. 76204.
United States Tax Court
T.C. Memo 1959-237; 1959 Tax Ct. Memo LEXIS 11; 18 T.C.M. (CCH) 1136; T.C.M. (RIA) 59237; December 18, 1959
*11 Held, petitioners have failed to prove that they are entitled to a deduction claimed on their joint income tax return for the calendar year 1954 of $1,500 as an embezzlement loss, or to a deduction of $445 for legal fees paid during the year 1954. Norbert Lloyd Enrick, pro se., 1600 Cambridge Circle, Charlottesville, Va. Charles B. Norris, Esq., for the respondent. *12 ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined a deficiency in income tax for the calendar year 1954 in the amount of $414.79. The issues are: (1) Whether the respondent erred in disallowing $1,500 claimed by petitioners as an embezzlement loss; and (2) whether the respondent erred in disallowing $445 claimed by petitioners as a deduction for legal fees paid during the year 1954. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Petitioners are husband and wife, residing in Charlottesville, Virginia. Their joint Federal income tax return for the calendar year 1954 was filed with the district director of internal revenue at Richmond, Virginia, on the cash basis. Among the itemized deductions claimed by petitioners on page 3 of their return was $1,500 for "Funds (Bonds) $5,000 embezzled by trustee. Legally settled for $3,500 as per copy of 'Receipt, Release and Discharge' attached. Net loss $1,500.00"; and $445 for "Legal Fees paid for legal action to recover the above $5,000.00 and interest." The claimed deductions were disallowed by the respondent for lack of substantiation. *13 Petitioner Mary Lou Enrick, formerly Mary Lou Lynch, a citizen of Canada, married petitioner Norbert Lloyd Enrick in May 1952; she came to the United States from Canada in 1953 and is now an American citizen. Mary and Norbert first met in 1951. Mary was an adopted child of a physician and his wife, William Warren Lynch and Ruth Melloon Lynch, of Sherbrooke, Quebec, Canada. Mary was adopted as an infant. About a year after the adoption, a son was born to Ruth, after which she lost all interest in Mary and, in the course of time, developed a dislike for the adopted child. Mary's foster father continued to provide for Mary as much as for his own son. During the war, he bought war bonds for his family and in doing so he purchased for Mary just as much as he did for his son, and his wife. During the years 1942 and 1943, Mary became the registered owner of Government of Canada bonds as follows: Interest
Maturity
Serial No.
Principal
Rate
Date
L2M9548
$1,000
3%
11-1-56
L4M32060
1,000
3%
5-1-57
L7Z18476
500
3%
1-1-59
By written instruments dated at Sherbrooke on August 8, 1944, the three abovementioned bonds were formally transferred from the *14 registered name of Mary Lou Lynch to "Bearer." Mary signed each instrument as "Transferor" and underneath her signature appeared the signature of "W. W. Lynch." The body of each instrument, except for bond number and principal sum, read as follows: "KNOW ALL MEN BY THESE PRESENTS THAT Mary Lou Lynch for value received, have sold, assigned and transferred and by these presents do sell, assign and transfer unto Bearer * * * Bond No. M-9548 of the above issue of the principal sum of $1,000 and do hereby irrevocably constitute and appoint the Bank of Canada my true and lawful attorney for me and in my name and stead to transfer and set over on the books of registration of the bonds of this issue the said Bond No. M-9548 to the said Bearer; with full power of substitution in the premises." During 1944, Mary became the registered owner of Government of Canada bonds as follows: Interest
Maturity
Serial No.
Principal
Rate
Date
L8M194
$1,000
1 3/4%
5-1-48
L8M195
1,000
1 3/4%
5-1-48
In September 1945, the two above-mentioned bonds were exchanged for bonds numbered L8M803 and L8M804 with the same maturity date and registered as follows: "W. W. Lynch *15 and Ruth Lynch, trustees for Mary Lou Lynch, minor." On October 27, 1949, Mary became the registered owner of a Government of Canada bond numbered S4B036809 in the principal amount of $500. On May 1, 1948, bonds numbered L8M803 and L8M804 and registered in the names of "W. W. Lynch and Ruth Lynch, trustees for Mary Lou Lynch, Minor," were redeemed, it being their maturity date. On January 26, 1951, bonds numbered L2M9548, L4M32060, and L7Z18476 of a total value of $2,500 were held by Montreal Trust Company of Montreal, Canada, under the name of W. W. Lynch in trust for Mary Lou Lynch and on that date, in accordance with instructions from W. W. Lynch, the bonds were sold by the Montreal Trust Company and the proceeds were remitted to W. W. Lynch. On February 1, 1951, the Montreal Trust Company, as redemption agent, redeemed bond numbered S4B036809 and on the application for redemption it made the following notation: "Transaction guaranteed and proceeds credited to the registered holder." The registered holder at that time was Mary Lou Lynch. Early in 1952 before petitioners were married, petitioners had a conversation with Mary's foster father, W. W. Lynch, in regard to the *16 previously mentioned bonds of a total value of $5,000. Petitioners told Lynch they were to be married and asked him if Mary would then receive the $5,000 of bonds he had bought for her. Lynch became agitated and told petitioners it was none of their business what he did with the bonds because Mary was not the age of majority. Mary then engaged the services of an attorney who addressed a letter to Lynch in regard to the bonds. On February 7, 1952, Mary received a communication from Lynch stating: "In view of a letter from your legal adviser have nothing to comment on." Petitioners, through a new attorney, continued to press Lynch for an explanation. In 1954, Mary reached her majority, at which time the opposing party proposed a settlement which petitioners accepted and signed a "Receipt, Release and Discharge" on May 1, 1954, the body of which is as follows: "In consideration of the sum of Three Thousand Five Hundred Dollars ($3,500.00) receipt of which is hereby acknowledged, I, MARY LOU LYNCH ENRICK, of the age of majority, wife of NORBERT L. ENRICK, hereby declare that I waive any and all rights or title or interest which I may have in the following Dominion of Canada Bonds numbers *17 L2M9548, L4M32060, L7Z18476, L8M194, L8M195 and S4B036809 having a total face value of $5,000.00 or the capital, interest and revenue thereof, and I hereby release and discharge WILLIAM WARREN LYNCH, physician, and/or RUTH MELOON LYNCH from any and all claims which I have or pretend to have with reference to the said bonds, the capital, interest or revenue thereof and for any claims for maintenance, education, nourishment or clothing. Whereof quit." At that time Mary was making no claim for maintenance, education, nourishment, or clothing but the attorneys for the Lynches insisted on having those items mentioned in the receipt, release and discharge. In obtaining the May 1, 1954 settlement, petitioners in 1954 paid legal fees amounting to a total of $445. Lynch died some time in 1954, 1955, or 1956. After his death, Government of Canada bonds of a value of $1,300 were turned over to Mary by the representatives of the estate of W. W. Lynch. These bonds constitute no part of the bonds previously mentioned herein. Petitioners did not sustain a loss in connection with Canadian Government bonds for which they are entitled to a deduction on their income tax return filed for the taxable *18 year 1954. Opinion Petitioners contend that the amount of $1,500 they claimed as a deduction on their 1954 joint return arose from "theft" and is deductible under section 165 [1] of the Internal Revenue Code of 1954. In support of this contention, petitioners have shown that at one time there were bonds of the total face value of $5,000 registered in petitioner Mary's name; that $2,500 of these bonds were later formally transferred from Mary's name to "Bearer"; that $2,000 of the bonds were exchanged for bonds registered in the names of "W. W. Lynch and Ruth Lynch, trustees for Mary Lou Lynch, minor"; that all of the bonds were either redeemed or sold for cash; that at least $4,500 [2] of the proceeds were remitted to W. W. Lynch; and that in 1954 when Mary reached her majority petitioners signed a receipt, release and discharge in which, in consideration of $3,500, they released and discharged the Lynches from any and all claims with reference to the bonds. *19 We do not think this showing is sufficient to support a deduction for a loss arising from "theft" notwithstanding that the word "theft" has been construed as "a word of general and broad connotation, intended to cover and covering any criminal appropriation of another's property to the use of the taker, particularly including theft by swindling, false pretenses, and any other form of guile." Edwards v. Bromberg, 232 F. 2d 107, 110 (C.A. 5, 1956). Mary believed she had a claim against the Lynches for $5,000 of bonds. The Lynches offered to compromise the claim for $3,500 and petitioners accepted the offer. That does not, in our opinion, prove that the balance of the claim had been stolen or misappropriated. The "Receipt, Release and Discharge" by its very provisions specifically releases and discharges the Lynches from "any and all claims" which Mary may have had or pretended to have had with reference to the bonds in question. Under these circumstances, it is difficult to claim that the bonds were stolen. When a donor of a gift is charged with stealing the gift he need not have made in the first place, the evidence of theft should be convincing. In David H. Schultz, 30 T.C. 256, 271 *20 (on appeal to C.A. 5), we said: "Whether a loss from theft, within the meaning of section 23(e)(3), [of the 1939 Code] has occurred depends upon the law of the jurisdiction in which it was sustained; furthermore, the exact nature of the crime is of little importance so long as it constituted a theft under the laws of that jurisdiction. Edwards v. Bromberg, 232 F. 2d 107 (C.A. 5); Curtis H. Muncie, 18 T.C. 849; Morris Plan Co. of St. Joseph, 42 B.T.A. 1190." The record in this case contains no proof of what the laws of Canada are in regard to theft or related crimes. We cannot take judicial notice of the Canadian statutes cited in petitioners' brief. Those laws must be both pleaded and proven. Liverpool Steam Co. v. Phenix Ins. Co., 129 U.S. 397, 445; Rowan v. Commissioner, 120 F. 2d 515 (C.A. 5, 1941), affirming J. V. Rowan, 42 B.T.A. 493. Even if the laws of Canada were properly before us, we have no convincing evidence that the Lynches committed any crime regarding the bonds in question. And it may be noted in passing that petitioners have offered no evidence of the "basis" for determining the amount *21 of the claimed deduction referred to in section 165(b) of the 1954 Code. Petitioners also contend that the legal fees paid in obtaining the May 1, 1954 settlement are deductible under section 165 as a loss arising from theft. All that we have said above regarding the claimed loss of $1,500 applies with equal force to this issue. Neither does the evidence show that the legal fees are deductible under section 212 [3] of the 1954 Code and petitioners make no contention that they are so deductible. We hold that petitioners have failed to prove that they are entitled to either of the deductions claimed by them in their return. Decision will be entered for the respondent. Footnotes
1. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) Amount of Deduction. - For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * *
(3) losses of property not connected with a trade or business, if such losses arise from * * * theft. * * *
(e) Theft Losses. - For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss. ↩
2. The evidence is not clear as to what happened to the proceeds from the redemption of Bond No. S4B036809. On the application for redemption is the notation that the proceeds were credited to the registered holder and at that time Mary was the registered holder.↩
3. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax.↩