HERBERT AND GLADYS BARRY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barry v. Commissioner
Docket No. 7006-76.
United States Tax Court
T.C. Memo 1978-215; 1978 Tax Ct. Memo LEXIS 301; 37 T.C.M. (CCH) 925; T.C.M. (RIA) 78215; June 8, 1978, Filed Gladys Barry, pro se. Frank W. Louis, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: Respondent determined a deficiency of $ 2,811.89 in petitioners' Federal income tax for the year 1973. The only issue for decision is whether the petitioners sustained a theft loss under section 165(c)(3), Internal Revenue Code of 1954, [1] from their sale of 153 shares of Equity Funding Corporation of America stock in 1973. All of the facts are stipulated and found accordingly. The pertinent facts are summarized below. Herbert and Gladys Barry (petitioners) were legal residents of Forest Hills, New York, when they filed their petition in this case. In 1969 the petitioners purchased 150 shares of Equity Funding Corporation *303 of America (EFCA) stock in two separate transactions. One hundred shares were acquired on May 26, 1969, and an additional 50 shares were acquired on August 26, 1969. The purchases of these shares were on the open market through a broker at a total cost of $ 10,891.47. On March 27, 1973, petitioners sold 153 shares of EFCA stock, their entire holding, in two separate transactions--one block of 100 shares and one of 53 shares. The 3 shares held by petitioners in 1973 in addition to the 150 shares purchased in 1969 were not acquired by purchase. The total of the net amounts due the petitioners on the two sales of the EFCA stock on March 27, 1973, was $ 2,558.27. Prior to March 1973, EFCA reported nonexistent income and assets on its books and records, including about two billion of bogus insurance policies on nonexistent individuals on the books of a subsidiary corporation. It also failed to report certain liabilities. Petitioners were informed of this situation on March 27, 1973, and immediately sold all of their EFCA stock. Trading in the stock was halted on the New York Stock Exchange on March 27, 1973--the same day on which petitioners' sales were consummated. On the *304 following day the Securities and Exchange Commission suspended trading of all securities of EFCA on all public markets. Many indictments have resulted from the Equity Funding fraud, including Federal indictments for conspiracy, mail fraud, securities fraud, wire fraud, filing false bank statements and filing false financial statements. Civil claims were filed against the accounting firms allegedly aware of the Equity Funding fraud prior to its public disclosure. Several of those indicted by the Federal grand jury have pleaded guilty to at least some of the charges in return for the dropping of other charges. A proceeding under Chapter X of the Bankruptcy Act was conducted in California with respect to EFCA, and an amended plan of reorganization was confirmed by the Bankruptcy Court in that proceeding in early 1976. As claimants in the reorganization proceeding the petitioners received 31 shares in a new company (Orion) which were worth approximately $ 5 per share when received in that year. On their joint Federal income tax return for 1973 the petitioners deducted as a theft loss the amount of $ 8,233, which represents the difference between the aggregate purchase and sale *305 prices of their EFCA stock less $ 100. In his statutory notice of deficiency dated April 29, 1976, respondent disallowed the theft loss deduction claimed by petitioners in the amount of $ 8,233 and allowed instead a long-term capital loss of $ 275.10, which is the amount of the maximum capital loss deduction remaining after a reduction for other losses previously shown and deducted on petitioners' 1973 return. Petitioners contend that the substantial diminution of their investment in the EFCA stock qualifies as a theft loss under section 165(c)(3)[2] rather than a long-term capital loss as determined by the respondent. They acknowledge the similarity of situations in the cases cited by respondent, but urge that "the circumstances in our case are quite definitely unique."[3] Respondent's position is two-pronged: (1) there was notheftfrom the petitioners and (2) the loss was not sustained in 1973 because of the existence of a reasonable prospect of recovery by petitioners as fraud claimants in the proceeding under Chapter X of the Bankruptcy Act. *306 Although the devastating plight of petitioners certainly engenders our concern and sympathy, we agree with respondent that petitioners are not entitled to a theft loss deduction. Such deductions have been sustained by this Court in cases where the theft consisted of false representations made to the taxpayer which induced him to part with his money or property. Nichols v. Commissioner,43 T.C. 842 (1965); Monteleone v. Commissioner,34 T.C. 688 (1960). Whether or not the fraudulent acts of corporate officers constitute a "theft" is to be determined by the law of the State where the loss was sustained. Paine v. Commissioner,63 T.C. 736, 740 (1975), affd. without opinion 523 F. 2d 1053 (5th Cir. 1975). The term "theft" includes, but is not limited to, larceny, embezzlement and robbery. Section 1.165-8(d), Income Tax Regs. It is to be broadly interpreted for the purposes of section 165. In the leading case of Edwards v. Bromberg,232 F. 2d 107, 110 (5th Cir. 1956), the Court *307 of Appeals said: the word "theft" is not like "larceny", a technical word of art with a narrowly defined meaning but is, on the contrary, a word of general and broad connotation, intended to cover and covering any criminal appropriation of another's property to the use of the taker, particularly including theft by swindling, false pretenses, and any other form of guile. [Fn. ref. omitted.] While it is clear that certain EFCA officials caused the publication of fraudulent financial statements in order to inflate artificially the market price of EFCA stock and they engaged in criminal activities for which convictions have resulted, we think the petitioners have failed to prove that a theft occurred under the New York Penal Law. [4] This record is devoid of evidence of the requisite specific intent of certain EFCA officers to obtain, acquire or secure petitioners' property. Their purchases and sales of EFCA stock were conducted through brokers on the open market. EFCA corporate officials had no direct dealings with petitioners. In this respect we find this case indistinguishable from *308 Paine v. Commissioner,supra, in which a theft loss deduction was denied. Under New York law the gist of larceny is the taking and carrying away of personal property of another with the specific intent of stealing it. People v. Levan,295 N.Y. 26, 64 N.E.2d 391 (1945). Such intent is an essential element of both the crime of larceny by false pretenses (cf. People v. Lehrer,182 Misc. 645, 45 N.Y.S. 2d 170, 172 *309 (Ct. of General Sessions, N.Y. Cty. 1943); Bonney v. Commissioner, 247 F. bd 237, 239 (2d Cir. 1957)), and the crime of obtaining property by false pretenses. People v. Powell, 22 App. Div. 2d 959, 256 N.Y.S. 2d 117, 118 (2d Dept. 1964). Similarly, since petitioners bought and sold their EFCA stock on the open market and not from and to EFCA officials, those officials did not wrongfully take, obtain or withhold property from petitioners as described in section 155.05(1), N.Y. Penal Law. Thus, in the absence of the necessary elements of specific intent and appropriation of petitioners' property, the criminal actions of EFCA officials do not constitute as to them the crime of obtaining property by false pretenses or any of the other crimes enumerated in the New York Penal Law. We conclude in these circumstances that section 165(c)(3) does not support the allowance of the claimed theft loss deduction for the decrease in the value of petitioners' stock in EFCA. The diminution in value of the stock does not come within the definition of "theft" for Federal income tax purposes. Moreover, even if a "theft" did occur on March 27, 1973, when the petitioners felt compelled *310 to sell their EFCA stock, it would be virtually impossible to determine what portion of the decline in the value of their stock was attributable to "theft" activities rather than to business risk, poor management market fluctuations or other factors. Cf. J. J. Dix, Inc. v. Commissioner,223 F. 2d 436 (2d Cir. 1955); Paine v. Commissioner,supra at 743. In view of our conclusion that the diminution in the value of petitioners' EFCA stock did not result from a theft under section 165(c)(3), it follows that no deduction is allowable under section 165(a). Respondent properly allowed a long-term capital loss. One final point. As Class 8 fraud claimants in the Chapter X reorganization proceeding, it would appear that in 1973 there existed a claim for reimbursement with respect to which there was a reasonable prospect of recovery, thus precluding the deduction of any loss in that year. Section 1.165-8(a)(2), Income Tax Regs. Aside from the reorganization proceeding, there was also the possibility that the alleged loss could be recouped by legal actions against responsible third parties. Hence this situation is analogous *311 to those cases in which litigation may be or has been instituted and where a reasonable prospect of recovery necessitates the postponement ofany deduction in the year claimed. See Ramsay Scarlett & Co. v. Commissioner,61 T.C. 795 (1974), affd. 521 F. 2d 786 (4th Cir. 197k). Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. The relevant provisions of section 165 are: SEC. 165. LOSSES. (a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) Amount of Deduction.--For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. (c) Limitation on Losses of Individuals.--In the case of an individual, the deduction under subsection (a) shall be limited to-- * * *
(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $ 100. For purposes of the $ 100 limitation of the preceding sentence, a husband and wife making a joint return under section 6013 for the taxable year in which the loss is allowed as a deduction shall be treated as one individual. No loss described in this paragraph shall be allowed if, at the time of filing the return, such loss has been claimed for estate tax purposes in the estate tax return. * * *
(e) Theft Losses.--For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss. (f) Capital Losses.--Losses from sales or exchanges of capital assets shall be allowed only to the extent allowed in sections 1211 and 1212. (g) Worthless Securities.-- (1) General rule.--If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset. (2) Security defined.--For purposes of this subsection, the term "security" means-- (A) a share of stock in a corporation; (B) a right to subscribe for, or to receive, a share of stock in a corporation; or (C) a bond, debenture, note, or certificate, or other evidence of indebtedness, issued by a corporation or by a government or political subdivision thereof, with interest coupons or in registered form. ↩
3. Petitioners' position is further expressed in their brief: Equity Funding Corporation was a unique swindle situation. Never before has there been a case involving $ 2.2 billion (dollars) worth of insurance policies being written on non-existing people. The writing of such bogus policies was not a business risk situation. It was not a poor management situation. The collapse of the stock price was not a market fluctuation. There was criminal intent and criminal action as evidenced by the fact that fourteen people were sentenced to prison as a result of false representation. We were being reassured continuously by the most reputable accounting firms such as Haskins & Sells and Peat Marwick (who are obliged to follow Securities Exchange Commission rulings) that all was well in Equity Funding Corporation. The most conservative and highly esteemed brokerage institutions maintained Equity Funding high up on their recommendation lists. It was therefore a mind boggling event to us when, suddenly, without any prior warning, the Equity Funding "bogus policy" scheme broke into the news on March 27, 1973. We sold our stock instantaneously, upon receiving knowledge of the situation. It was our only hope of not being swindled out of all of our money. As it turned out - having to sell the stock at any price we could get, caused us to suffer what was for us a grave loss.↩
4. Common law larceny is codified in New York. It includes larceny by trick, embezzlement, obtaining money under false p tenses or by false promise.N.Y. Penal Law, Sec. 155.05(2) (McKinney 1975). An essential element of each of these crimes is that a person wrongfully takes, obtains or withholds property from an owner with intent to deprive him of such property or to appropriate such property to himself or to a third person. N.Y. Penal Law, Sec. 155.05(1). Robbery is forceable stealing, i.e., the use of or the threat of immediate use of physical force in the course of committing a larceny. N.Y. Penal Law, Sec. 160.00↩.