MARIE E. HALLAM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hallam v. Commissioner
Docket No. 15480-80.
United States Tax Court
T.C. Memo 1983-384; 1983 Tax Ct. Memo LEXIS 404; 46 T.C.M. (CCH) 638; T.C.M. (RIA) 83384; June 29, 1983. Allen R. Dyer, for the petitioner. Clare J. Brooks, for the respondent. FORRESTER
MEMORANDUM *405 FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent determined a deficiency of $1,776 in petitioner's income tax for 1977. The following issues are presented for our decision: (1) whether petitioner suffered a theft loss in 1977; (2) whether legal fees incurred in a suit to recover stolen funds are deductible; (3) whether petitioner paid certain state sales taxes in 1977; and (4) whether petitioner paid certain employee business expenses. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner Marie E. Hallam (hereinafter Marie) resided in Baltimore, Maryland, when the petition in this case was filed. Issue 1. Theft Loss Deduction
Marie holds a Ph.D. in geochemistry from Johns Hopkins University.She entered Johns Hopkins as a graduate student in 1964. Shortly thereafter she became acquainted with William Gross (hereinafter Gross), and she maintained a casual friendship with Gross until 1969. During 1969, Marie was depressed. In that year, she received $22,500 from the estate of her father, but felt herself ill-equipped to handle her legacy. During 1969 Marie's mother made frequent demands on her for the aforementioned *406 $22,500. Also during 1969, Marie discussed her personal problems with many people, including Gross. When Gross learned of Marie's difficulties, he was solicitous towards her and offered his assistance. Marie became romantically involved with Gross in early 1970. Between 1970 and 1975, Marie allowed Gross almost unrestricted use of her car.In 1973, Marie moved to Cambridge, Massachusetts. At her request, Gross moved into Marie's Baltimore residence while she was in Cambridge. Gross lived in the house, which was jointly owned by Marie and her mother, until 1974. On November 19, 1974, Marie signed an American Express guarantee of payment agreement in which she guaranteed any debts to American Express that Gross might incur. On March 4, 1975, Marie executed a will devising her entire estate, after the payment of funeral expenses, to Gross. Between 1972 and 1975, Marie drew 23 checks payable to Gross, totaling $8,579.57. [1]
Between 1970 and 1975, Marie had numerous discussions *407 with Gross on the topic of marriage. Between 1970 and 1975, Marie had at least two savings accounts in her own name, at Baltimore and Boston savings institutions. On November 11, 1977, Marie signed an application for statement of charges in which she accused Gross of misappropriating her funds. As a result of this action Gross was arrested on January 12, 1978, but the criminal charges against Gross were eventually dropped. In the application for statement of charges, Marie alleged that "[d]uring the year 1970 I entered into a contract with William B. Gross, Jr., whereby I agreed to entrust into Mr. Gross's possession * * * approximately $8,000, said sum to be returned to me upon demand, together with 6.53 percent interest." In April 1977, Marie filed a civil suit against Gross. In her pleading in that case, Marie alleged "that during the year 1970, the Defendant [Gross] entered into a contract with the Plaintiff whereby the Plaintiff agreed to loan about $8,000 to Defendant and, in consideration thereof, Defendant agreed to return the money upon demand to Plaintiff plus interest at the rate of 6.53 per cent annually." Marie's civil suit against Gross is still pending. *408 At some point between 1970 and 1975, Gross purchased for Marie, with funds supplied by Marie, a tape recorder at a cost of approximately $4,000. Gross did not hold a job for pay between 1970 and 1977. He does not have a social security number and has never filed a tax return. Issue 2. Deductibility of Legal Fees
During 1977 Marie paid her attorney, Allen Dyer, $210 for services rendered in bringing suit against Gross. Issue 3. State Sales Tax
During 1977, Marie paid state sales tax of no more than $353.32. OPINION Issue 1. Theft Loss Deduction
Taxpayers may deduct losses arising from theft. Sec. 165(c)(3). [2] Whether a loss qualifies as a theft for purposes of section 165(c)(3) is a question of local law. Edwards v. Bromberg,232 F.2d 107 (5th Cir. 1956); Paine v. Commissioner,63 T.C. 736, 740 (1975), affd. without published opinion 523 F.2d 1053 (5th Cir. 1975). Petitioner bears the burden of *409 proving the existence and the amount of a theft. Rule 142(a). Maryland law, as in effect in 1977, provided as follows: Sec. 353. Larceny after trust. Any person who shall be entrusted with the possession of goods or things of value for the purpose of applying the same for the use and benefit of the owner or person who delivered the goods and things who shall fraudulently convert the same to his own use, shall, where the value of the things so converted is one hundred dollars or more, be deemed guilty of a felony * * * [Md. Ann. Code art. 27, sec. 363 (1967).] Two elements must be shown to convict under this section: (1) the willful, deliberate conversion of items entrusted to the accused; and (2) purposeful refusal, accompanied by a fraudulent intent, to return them to the rightful owner. Roderick v. State,9 Md. App. 120, 262 A. 2d 783 (1970). Marie must prove these elements to satisfy the burden of proof imposed by Rule 142(a). Although Marie's testimony is not completely clear, she appears to claim that she entrusted to Gross over $16,000 between 1970 and 1975--$8,000 in 1970 or 1971, and the remainder between 1972 and 1975--with the understanding *410 that he would deposit it in the savings and loan which he determined paid the highest interest on savings accounts. Marie testified that she did not ask Gross what he had done with the money entrusted to him, or request its return, until November 1975, at which time she requested that he either produce the account records from the savings and loan where he had supposedly deposited the money, or produce the money. According to Marie, Gross responded by stating that he was seriously ill and might lose an arm, or die. He is further alleged to have stated, without producing any records, that he had $9,150 of Marie's money. Marie testified that at this point she entrusted to Gross an additional $781.87 for him to hold for her, [3] upon which Gross allegedly put his arm around her and said "now doesn't it feel good to have someone that you can trust with money." *411 For the reasons set out below, we do not believe Marie has met her burden of proving that Gross converted funds entrusted to him to be held for the use and benefit of Marie. According to Marie's testimony, and the papers she filed in her criminal action against Gross, she entrusted about $8,000 to him in 1970 or 1971. But Marie has not established that she actually entrusted any money to Gross in 1970, and in her civil action against him this same "about $8,000" is denominated a demand loan with interest of 6.53 percent. Marie was able to testify in excruciating detail concerning events almost contemporaneous with the alleged entrustment of funds to Gross, yet her testimony concerning the circumstances under which she entrusted money to Gross and the amount entrusted was vague and unspecific. [4] We find and hold that Marie's unspecific and unsubstantiated testimony that she entrusted to Gross $8,000 or $9,000 in 1970-71 does not suffice to carry her burden of proof. *412 Marie also suggested at trial that the $8,579.57 she delivered to Gross between 1972 and 1975 was entrusted to him to invest for her in a savings and loan institution and was never returned to her. Respondent contends that the checks delivered to Gross between 1972 and 1975 represent reimbursements for expenses incurred on Marie's behalf by Gross, gifts, and payment for the $4,000 tape recorder Gross purchased for Marie. Marie testified that her relationship with Gross significantly tapered off after 1972. She admits, however, that she discussed marriage with Gross after 1972. In 1975 she made a will devising her entire estate to Gross. She allowed Gross virtually unrestricted use of her car between 1970 and 1975.She allowed Gross to live in her Baltimore residence during 1973 and 1974. She guaranteed an American Express card for Gross in 1974. On this record it appears more likely that the $8,579.57 delivered to Gross between 1972 and 1975 was comprised of payments for the tape recorder purchased by him for Marie, reimbursements for car and house repair expenses, and gifts, rather than that it was entrusted to Gross for investment on Marie's behalf. We find it inherently *413 incredible that a person of Marie's obvious intelligence and accomplishments would have used an intermediary to deposit significant amounts of money in a savings and loan [5] without insisting that the account be kept in her name or asking to see records of her investment. Based on the foregoing considerations, and the entire record, we find and hold that Marie has not met her burden of proving that Gross ever converted funds entrusted to him for Marie's use and benefit, and that she therefore has not established that she suffered a loss cognizable as a larceny after trust under Maryland law. The theft loss deduction claimed by Marie for 1977 under section 165(c)(3) is therefore disallowed. Issue 2. Deductibility of Legal Fees
Individuals may deduct all ordinary and necessary expenses paid for the production or collection of income, or for the management, conservation or maintenance of property held for the production of income. Sec. 212. Marie contends that she is entitled to deduct attorney's fees paid in connection with her suit against Gross. Respondent *414 argues that such expenses are not deductible. Section 1.212-1(k), Income Tax Regs., provides that expenses paid to recover property (other than investment property, and amounts of income which, if and when recovered, must be included in gross income) are not deductible. The expenses allocable to Marie's attempt to recover the money allegedly entrusted to Gross are thus not deductible. Kurkjian v. Commissioner,65 T.C. 862, 871 (1976). Any interest recovered by Marie through her suit against Gross, however, will be includable in gross income; it follows that expenses allocable to the attempt to recover interest on the amount entrusted to Gross are deductible. See Kurkjian v. Commissioner,supra at 871; Kelly v. Commissioner,23 T.C. 682, 688 (1955), affd. 228 F.2d 512 (7th Cir. 1956). [6]
On the record before us we can make only a rough approximation of the amount attributable to the attempt to recover interest. Doing the best we can with the evidence before us, Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), and bearing *415 heavily against petitioner, upon whom rests and burden of proof, we find and hold that of the legal fees paid by Marie, $60 is allocable to the attempt to recover interest on the money allegedly entrusted to Gross. Issue 3. State Sales Tax
State sales tax may be deducted in the year paid. Sec. 164(a). Marie testified at trial that she paid sales tax of $726.32 in 1977. She derived this figure from an examination of her credit card bills, checks, and receipts from 1977. In his deficiency statement, respondent allowed Marie a sales tax deduction of $390.40. After a careful examination of the documents offered in evidence by Marie, we find that Marie has met her burden of proving only that she paid sales tax of $353.32 in 1977. Accordingly, respondent's determination on this issue is sustained. Issue 4. Employee Business Expenses
Ordinary and necessary employee business expenses may be deducted in the year paid. Sec. 162. The burden is on Marie to establish the deductibility of claimed employee business expenses. Rule 142(a). Marie presented no evidence on this issue, and thus has not met her burden of proof. Accordingly, respondent's determination on this *416 issue is sustained. Decision will be entered under Rule 155.
Footnotes
1. The amounts of these checks were as follows: $56.29; $22.81; $350; $20; $20; $206; $550; $100; $400; $710; $45; $575; $550; $950; $1,100; $400; $695; $135; $516; $103.47; $225; $150; and $700.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. According to Marie's testimony, by this time she had entrusted over $16,000 to Gross for him to deposit in a savings and loan. We find it incredible that had she actually entrusted $16,000 to him, she would have entrusted $781.87 more upon learning that he was unable to account for almost $7,000 of the money previously entrusted to him.↩
4. Marie testified as follows on this point: Q And how much did you inherit? A $22,500. Q And what did you do with that money? A I used approximately $2,000 to purchase a car. I made investments with Mr. Gross' help of, I think it was $11,200, and most of the rest of it I entrusted to Mr. Gross, say around $8,000 or $9,000. Q That was in 1970? A 1970-71.↩
5. We note that between 1972 and 1975 Marie maintained at least two savings accounts in savings institutions.↩
6. Marcus v. Commissioner,T.C. Memo. 1964-206↩.