T.C. Summary Opinion 2006-37


UNITED STATES TAX COURT


M. MICHAEL STEWART, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13167-04S.              Filed March 2, 2006.


M. Michael Stewart, pro se.

<u>Thomas Newman</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $27,629 deficiency in petitioner's 2001 Federal income tax. In an answer filed with the Court respondent asserted an increased deficiency totaling $35,555. The issues for decision are: (1) Whether petitioner is entitled to the nonrecognition provisions of section 1031 with respect to gain realized of $111,715 from the sale of real property; (2) if petitioner must recognize any portion of the realized gain of $111,715, whether she is entitled to a theft or casualty loss relating to the attempted reinvestment of a portion of the gain; and (3) whether petitioner is entitled to certain claimed Schedule C, Profit or Loss From Business, deductions.[1]

## Background

Some of the facts have been stipulated, and they are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in San Jose, California.

Petitioner and her now-deceased husband Earl Stewart (Earl) purchased a condominium on February 24, 1998, in San Diego. The purchase price was approximately $124,000. Earl died on May 9, 1998. Petitioner and her husband had purchased the condominium with the intention of residing in it upon retirement. However, petitioner and Earl did not move into the condominium, and after

---

[1] Other adjustments to Social Security income, itemized deductions and a personal exemption are computational in nature resulting from the change in adjusted gross income.

Earl's death, petitioner decided to offer the condominium for rent and in fact rented it for a period of time. On July 20, 2001, petitioner sold the condominium for $345,000. The parties agree that petitioner's basis in the condominium was $253,576 and petitioner's gain on the sale was $111,715.

The proceeds of the sale of the condominium were deposited with First American Exchange Corporation (FAEC), as petitioner intended to purchase other property in a like-kind exchange pursuant to section 1031. In a letter dated October 30, 2001, petitioner requested, through her attorney, a return of the funds held by FAEC. The letter stated among other things:

> Although it is outside the normal business practice of First American Exchange Corporation of California to release these funds and the release may be prohibited pursuant to Paragraph 8.2 of the above mentioned agreement as well as disallowed pursuant to section 1.1031(k)-1(g)(6) of the IRC, Exchangor has determined that it is impossible for qualified intermediary to acquire any of the identified Replacement Properties because they have been sold to other parties and are no longer for sale and therefore has made the above demand for the release of the funds. First American Exchange Corporation of California is hereby held harmless from and against any and all tax liabilities, which may or may not be incurred by the Exchange or due to this release or any other matters relating to the Tax Deferred Exchange transaction and the property or properties contained therein.

In a letter dated November 7, 2001, FAEC advised that the funds were wired to petitioner's account on October 31, 2001. FAEC also forwarded with the letter a copy of a Form 1099 to petitioner. Petitioner did not purchase other property in

exchange for the San Diego property within 180 days of the sale of the San Diego condominium.

On November 6, 2001, petitioner authorized two wire transfers of $30,000 each from her account to the account of her cousin, James F. Graves (Graves). Petitioner was told by Graves that he was going to invest the funds in a business which would satisfy the provisions of a section 1031 exchange. Petitioner received a promissory note dated November 8, 2001, signed by Graves. The note reflected a promise to pay a sum of $60,000 with a maturity date of February 8, 2002, and interest at 9 percent. Petitioner believed that Graves attempted to invest the funds in real estate but was unable to do so. The record reflects that the funds may have been directed to ESPO Entertainment Center, LLC (ESPO) in an attempt to acquire property. It further appears that property was never purchased, and ESPO went out of business in 2002 or 2003.[2] At the date of trial, petitioner had not received any return of funds from Graves or from any other person or entity relating to the $60,000 forwarded to Graves.

---

[2] The record is sparse as to the relationship between ESPO, Graves, and petitioner. A Form K-1, Partner's Share of Income, Credits, Deductions, etc., was issued to petitioner (through her revocable living trust), reflecting negative income for 2003. A letter from a law firm in 2005 indicates that ESPO filed a final return for 2003 and that it was dissolved by the Illinois Secretary of State in 2004.

Petitioner also carried on an activity of publishing a visitor's guide for the geographic area of Mountain View, San Mateo, Foster City, and Half Moon Bay. Petitioner rented an apartment for 3 months in San Bruno while conducting this activity. She also rented furniture for the apartment. The cost of the furniture rental was $1,000.68. Petitioner incurred some interest expense and entertainment expense relating to the activity of publishing the visitor's guide. Petitioner traveled sometimes to conduct this activity, but there is nothing in this record indicating the extent of the travel.

Petitioner filed an individual Federal income tax return for the taxable year 2001. Petitioner attached to the return a Form 8824, Like-Kind Exchanges. Petitioner reported a realized gain of $111,715 on the sale of the San Diego condominium and a deferred gain of the same amount. Petitioner also reported on Schedule C among other items, rent or lease of vehicle of $1,001, rent of $6,000, and deductions for interest expense of $4,742. Petitioner listed the principal business as "Advertising".

In a notice of deficiency, respondent determined that petitioner was not entitled to defer the gain on the sale of the San Diego condominium. Respondent determined that petitioner should recognize a $86,857 capital gain from the sale of the San Diego condominium. The notice further disallowed certain Schedule C deductions as follows: (1) $1,001 in claimed rent or

lease of vehicle; (2) $4,000 of the claimed $6,000 rental deduction; and (3) the full amount of the $4,742 claimed interest deduction.

After the notice of deficiency was issued and a petition was filed, respondent concluded that the notice did not accurately reflect the correct adjustments. Apparently some confusion was created by the return, since petitioner listed other property on Schedule E, Supplemental Income and Loss, and also incorrectly reported the purchase of a "warehouse" on Form 8824. In his answer respondent claimed that the realized gain on the sale of the San Diego condominium was composed of a capital gain of $91,424 and an ordinary gain of $20,291. The total of these two amounts, $111,715, was reported on the 2001 return as realized, but deferred gain. This claimed adjustment results in a $7,926 increase in the deficiency. Petitioner agrees to the correctness of this revised computation but nevertheless argues that the gain should be deferred or that she is entitled to a theft or casualty loss.

## Discussion

### I. Burden of Proof

Generally, the burden of proof is on the taxpayer. Rule 142(a)(1). Under section 7491, the burden of proof shifts from the taxpayer to the Commissioner if the taxpayer produces credible evidence with respect to any factual issue relevant to

ascertaining the taxpayer's liability. Sec. 7491(a)(1). However, where the Commissioner raises a new matter or claims an increase in the deficiency, the burden of proof is on the Commissioner. Rule 142(a)(1); Achiro v. Commissioner, 77 T.C. 881, 889-890 (1981); Burris v. Commissioner, T.C. Memo. 2001-49; Jamerson v. Commissioner, T.C. Memo. 1986-302.

As to the adjustments set forth in the notice of deficiency, petitioner has neither argued that the burden of proof should shift nor satisfied the criteria that would cause the burden of proof to shift. As to petitioner's alternative position that there was a theft loss, petitioner did not raise this issue until trial; therefore petitioner did not satisfy the requirements of section 7491(a)(2) (complied with requirements to substantiate any item and maintained records required and cooperated with reasonable requests for information, documents, etc.), and the burden of proof remains with petitioner. As to the remaining issues, given the lack of documentation and information provided by petitioner, we conclude that the burden of proof remains with her with respect to all adjustments determined in the notice of deficiency. As to the burden of proof with respect to the nonrecognition of gain, including the adjustment claimed in respondent's answer, petitioner has agreed that respondent's computation of the gain is correct and there is otherwise no

factual dispute. Accordingly, the burden of proof does not play a role in this regard.

II. Section 1031

Section 1031 provides that no gain or loss is recognized when business or investment property is exchanged solely for other business or investment property of like kind. A taxpayer must satisfy a number of technical requirements to come within the nonrecognition provisions of section 1031 including that timing requirements are met regarding identification and receipt of replacement property. Sec. 1031(a)(3). Here, there was no replacement property, and petitioner withdrew the proceeds of sale from the exchange company prior to forwarding the funds to Graves. Petitioner does not seriously argue that she complied with the provisions of section 1031. While she may have been misled by Graves, it is clear that she did not satisfy any of the provisions of section 1031. Petitioner's intent to exchange the property and qualify for nonrecognition treatment is not sufficient to satisfy the statute. See Biggs v. Commissioner, 632 F.2d 1171 (5th Cir. 1980), affg. 69 T.C. 905 (1978). Petitioner does not qualify for nonrecognition treatment, and respondent is sustained on this issue.

III. Theft Loss

Section 165(a) provides a deduction for any loss sustained during the taxable year not compensated for by insurance or

otherwise.  Under section 165(c), losses of individuals are limited to (1) losses incurred in a trade or business, (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business, and (3) losses of property not connected with a trade or business or a transaction entered into for profit, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft.  Section 165(e) provides that any loss arising from theft will be treated under section 165(a) as sustained during the taxable year in which the taxpayer discovers the loss.

Whether a loss constitutes a theft loss is determined by examining the law of the State where the alleged theft occurred. Bellis v. Commissioner, 540 F.2d 448, 449 (9th Cir. 1976), affg. 61 T.C. 354 (1973); Edwards v. Bromberg, 232 F.2d 107, 111 (5th Cir. 1956); Viehweg v. Commissioner, 90 T.C. 1248, 1253 (1988). Section 484(a) of the California Penal Code (West Supp. 2004) defines theft as follows:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property * * * is guilty of theft. * * *

To support a finding of theft by false pretense in California, section 484(a) of the California Penal Code requires intent on the part of the defrauder to obtain for himself the victim's

property.  People v. Ashley, 267 P.2d 271, 279 (Cal. 1954); People v. Fujita, 117 Cal. Rptr. 757, 764 (Ct. App. 1974); People v. Conlon, 24 Cal. Rptr. 219, 222 (Dist. Ct. App. 1962).

A theft loss requires a criminal appropriation of another's property.  Edwards v. Bomberg, supra at 110; Bellis v. Commissioner, 61 T.C. 354, 357 (1973), affd. 540 F.2d 448 (9th Cir. 1976); Harcinske v. Commissioner, T.C. Memo. 1984-132.

The record in this case is sparse as to the circumstances in which petitioner wired Graves $60,000.  The record does reveal that petitioner was given a note; thus it appears that petitioner initially believed that the transaction was designed as a loan. We have no information as to what Grave's intentions were with respect to the funds.  There is nothing in this record indicating that any civil or criminal action was taken against Graves upon his failure to either invest or return the funds.  Whether a theft occurred, it is unclear whether the theft occurred at the time the funds were wired to Graves, or at some later time.  More importantly, if there was a theft, the record is unclear as to when petitioner discovered the theft and whether she pursued a claim for reimbursement.

As indicated, for purposes of section 165(a), a loss arising from theft is treated as sustained during the taxable year in which the taxpayer discovers such loss.  Sec. 165(e); sec. 1.165-8, Income Tax Regs.; see Lolli v. Commissioner, T.C. Memo. 1996-

121. Further, if there is a claim for reimbursement for which there is a reasonable prospect of recovery, the regulations require that a taxpayer claim the loss in the taxable year in which it can be ascertained with reasonable certainty whether or not reimbursement will be received. Sec. 1.165-1(d)(3), Income Tax Regs. As there is a total lack of evidence with respect to the existence of a theft loss, the year of discovery of any loss, and any prospect of reimbursement, we cannot conclude that petitioner satisfies the requirements for a theft loss for the taxable year 2001. Respondent is sustained on this issue.

IV. Schedule C Deductions

Section 162(a) permits a deduction for the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Expenses that are personal in nature are generally not allowed as deductions. Sec. 262(a). A taxpayer is required to maintain records sufficient to establish the amount of his income and deductions. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. A taxpayer must substantiate his deductions by maintaining sufficient books and records to be entitled to a deduction under section 162(a). When a taxpayer establishes that he has incurred a deductible expense but is unable to substantiate the exact amount, we are generally permitted to estimate the deductible amount. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We can

estimate the amount of the deductible expense only when the taxpayer provides evidence sufficient to establish a rational basis upon which the estimate can be made.  Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Section 274(d) supersedes the general rule of Cohan v. Commissioner, supra, and prohibits the Court from estimating the taxpayer's expenses with respect to certain items.  Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969).  Section 274(d) imposes strict substantiation requirements for listed property as defined in section 280F(d)(4), gifts, travel, entertainment, and meal expenses. Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  To obtain a deduction for a listed property, travel, meal, or entertainment expense, a taxpayer must substantiate by adequate records or sufficient evidence to corroborate the taxpayer's own testimony the amount of the expense, the time and place of the use, the business purpose of the use and, in the case of entertainment, the business relationship to the taxpayer of each person entertained.  Sec. 274(d); sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  Section 274 requires that expenses be recorded at or near the time when the expense is incurred.  Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016

(Nov. 6, 1985).  Listed property includes passenger automobiles. Sec. 280F(d)(4)(A)(i).

Petitioner testified that some of the expenses in issue related to travel, meals, and lodging.  Petitioner presented some credit card receipts and other miscellaneous and disorganized records in an attempt to substantiate the Schedule C deductions in issue.  Petitioner failed to establish that the claimed rental and interest expenses were ordinary and necessary business expenses paid or incurred during 2001 in carrying on a trade or business.  With respect to travel expenses, petitioner did not satisfy the substantiation provisions of section 274(d). Respondent's determination is sustained in this regard.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered for respondent.