T.C. Memo. 2011-184

UNITED STATES TAX COURT

LOUISE E. NAGEL AND GARY B. NAGEL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30645-08.                    Filed August 2, 2011.

        R determined deficiencies in Federal income taxes
and additions to tax pursuant to sec. 6651(a)(1),
I.R.C., for Ps' 2004 and 2006 tax years.  After
concessions, the issues for decision are:  (1) Whether
Ps are entitled to deduct as a theft loss for their
2004 or 2006 tax year expenses relating to the
foreclosure of the mortgage on their then residence;
(2) whether Ps are entitled to deduct as a theft loss
for their 2004 and 2006 tax years expenses relating to
wage garnishments; and (3) whether Ps are liable for
sec. 6651(a)(1), I.R.C., additions to tax for their
2004 and 2006 tax years.

        <u>Held</u>:  Ps are not entitled to deduct expenses relating
to the foreclosure of the mortgage on their then residence
for their 2004 or 2006 tax year.  <u>Held, further</u>, Ps are not
entitled to deduct expenses relating to wage garnishments
for their 2004 and 2006 tax years.  <u>Held, further</u>, Ps are
liable for additions to tax under sec. 6651(a)(1), I.R.C.,
for their 2004 and 2006 tax years.

Louise E. Nagel and Gary B. Nagel, pro sese.

Anna A. Long, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


WHERRY, Judge:  This case is before the Court on a petition
for redetermination of deficiencies, as determined by respondent,
concerning petitioners' 2004 and 2006 tax years.  After
concessions, the issues for decision are:  (1) Whether
petitioners are entitled to a $29,785 theft loss deduction for
2004 or 2006 relating to the 2003 foreclosure of the mortgage on
petitioners' then residence; (2) whether petitioners are entitled
to a $1,925 theft loss deduction for 2004 and a $434 theft loss
deduction for 2006 relating to wage garnishments; (3) whether
petitioners are liable for a $100 addition to tax under section
6651(a)(1) for 2004; and (4) whether petitioners are liable for a
$203.25 addition to tax under section 6651(a)(1) for 2006.[1]

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated
facts and accompanying exhibits are hereby incorporated by
reference into our findings.  At the time they filed their

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code of 1986, as amended and in effect for
the tax years at issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

petition and during the tax years at issue, petitioners, who are husband and wife, resided in California.

From approximately 1989 through mid-October 1995 petitioner Gary Nagel (Mr. Nagel) was an at-will employee truck driver with Nature's Best.

From 2004 through 2006 and for years prior petitioner Louise Nagel (Mrs. Nagel) was employed as a medical transcriptionist.

Filing of Federal Income Tax Returns

Because petitioners did not timely file their Federal income tax returns for the taxable years 2000 through 2006, respondent prepared substitutes for returns for these taxable years pursuant to section 6020(b).

On November 16, 2007, petitioners belatedly mailed, by means of United Parcel Service ground delivery, their Forms 1040, U.S. Individual Income Tax Return, for their 2000, 2001, and 2002 tax years, as well a Form 1040X, Amended U.S. Individual Income Tax Return, for their 2003 tax year to respondent's Taxpayer Advocate Service office.

On December 3, 2007, petitioners belatedly mailed by means of United Parcel Service ground delivery, their 2004, 2005, and 2006 Forms 1040 to respondent's Taxpayer Advocate Service office, at Austin, Texas, which were delivered on or before December 6, 2007. Petitioners did not apply for, nor did they receive, any extensions of the due dates for their 2004 and 2006 tax returns.

The Foreclosure

In 1978 petitioners bought a residence in Moreno Valley, California (the residence).

On November 15, 1990, an executed deed of trust to secure a purchase money loan of $88,000 relating to the residence was recorded between petitioners and petitioners' mortgage servicing company.  Under the deed of trust, the mortgage servicing company had the right to require petitioners to reimburse expenses the mortgage servicing company paid to prevent foreclosure of the mortgage on the residence.

In 1996 petitioners stopped paying Riverside County property taxes on the residence.  On June 3, 2002, Riverside County mailed petitioners a final notice of power to sell the residence (notice to sell).  The notice to sell required petitioners to make full payment of, or start an installment plan to pay, their delinquent Riverside County property taxes.  The notice to sell also informed petitioners that if they did not redeem or start an installment plan to pay their delinquent property taxes by June 28, 2002, Riverside County would sell the residence.  In response to receiving the notice to sell, Mr. Nagel went to the County Recorder's office to discuss payment of his delinquent taxes.  Petitioners did not pay their delinquent Riverside County property taxes, and petitioners' mortgage servicing company exercised its right to pay them on petitioners'

behalf.  Accordingly, petitioners' mortgage servicing company increased petitioners' monthly mortgage payments to reflect its payment of petitioners' property taxes.  The mortgage servicing company sent petitioners a letter on October 7, 2002, explaining the increase in their monthly mortgage payment from $796.96 to $1,664.10 to account for petitioners' delinquent property taxes and explaining that they would not accept partial payments.  Petitioners continued to make payments of only $796.76, and the mortgage servicing company returned petitioners' checks for September and October 2002 on account of insufficient payment.

After petitioners' mortgage servicing company began refusing acceptance of partial payments, petitioners made monthly deposits of $796.76 into a trust account and no longer sent the mortgage servicing company any payments.  On October 16, 2002, petitioners' mortgage servicing company informed petitioners that if full monthly payments were not made and default cured, the mortgage servicing company would foreclose on the mortgage.

In January 2003 petitioners' mortgage servicing company informed petitioners that Attorneys Equity National Corp. (Attorneys Equity) had been substituted as trustee under the deed of trust.  In February 2003 foreclosure procedures were initiated against petitioners.  On February 8, 2003, Attorneys Equity recorded a notice of default and election to sell dated December 6, 2002, with Riverside County.

On May 7, 2003, Attorneys Equity mailed petitioners a notice of trustee's sale, informing them it was the trustee appointed under the deed of trust relating to the foreclosure of the mortgage on the residence and warning them that unless they took immediate action, the residence could be sold. A day later, Attorneys Equity recorded the notice of trustee's sale with Riverside County.

On June 4, 2003, Attorneys Equity recorded a trustee's deed granting the foreclosed residence to J&K Equities. The trustee's deed recorded June 4, 2003, indicates that the foreclosed residence was sold to J&K Equities for $142,400 at a public auction on May 27, 2003.

Petitioners' unpaid debt at the time of foreclosure was somewhere between $77,960.35 and $96,345.71.[2]

Attorneys Equity paid petitioners' then mortgage servicing company, Alliance Mortgage, $95,074.57 from the 2003 foreclosure.

A judgment granting Joe Harper, president of J&K Equities, a writ of possession to the residence was entered on June 10, 2003.

On July 16, 2003, a copy of the writ of possession was mailed to petitioners, as well as posted to the premises of the

_____

[2]Federal Home Loan Mortgage Corporation Form 1099-A, Acquisition or Abandonment of Secured Property, reported to respondent that petitioners' unpaid debt at the time of sale of the foreclosed residence was $77,960.35, but the trustee's deed recorded June 4, 2003, indicates that petitioners' unpaid debt at the time of sale was $96,345.71.

foreclosed residence.  Petitioners did not voluntarily vacate the premises of the foreclosed residence and were evicted on July 24, 2003.

On July 25, 2003, Mr. Nagel attended a hearing regarding the enforcement of the June 10, 2003, writ of possession, at which time he filed a motion to vacate the writ and it was denied.

On or about July 26, 2003, petitioners filed a claim with their home insurance company, Century-National Insurance (Century National), relating to the foreclosure of the mortgage on the residence.  After conducting a thorough investigation, Century National denied petitioners' claim on September 29, 2003.

Petitioners filed a claim with the Office of Thrift Supervision, Department of the Treasury (Office of Thrift Supervision), relating to the foreclosure of the mortgage on the residence.  On September 27, 2004, the Office of Thrift Supervision sent petitioners a letter informing them that it had contacted EverBank Mortgage Co. (EverBank), formerly Alliance Mortgage Co., on petitioners' behalf and that EverBank's response letter "and the supporting sixteen exhibits" were "enclosed for [petitioners'] information."  The Office of Thrift Supervision's letter further informed petitioners that their claim was "not subject to our jurisdiction" and encouraged them "to consult with legal counsel regarding any recourse * * * [they] might have regarding the sale" of the residence.  Finally, the September 27,

2004, letter notes that Everbank's response letter "points to a source from which you may be able to claim excess funds from the sale of your former home. * * * We encourage you to take prompt action to follow up on this lead and to investigate submitting a claim."  It is unclear from the record whether petitioners ever contacted this potential recovery source.

Petitioners contacted Freddie Mac, their onetime lender, concerning the foreclosure of the mortgage on the residence.  On June 9, 2006, Freddie Mac responded to petitioners indicating that "As I have informed you both in writing and over the telephone, on numerous occasions, you lost your property to foreclosure sale because you defaulted in the repayment of your mortgage loan obligation".  Freddie Mac's response encouraged petitioners to seek legal advice if they thought "the mortgage loan transaction that * * * [they] entered into, or the servicing of that loan, or the foreclosure of the secured property, was in any way unlawful".  Petitioners did not seek legal advice.

On April 23, 2007, the Office of the District Attorney for Riverside County sent Mr. Nagel a letter, informing him that they had "reviewed the information in * * * [his] complaint" regarding the foreclosure of the mortgage on the residence, but "determined that there is insufficient evidence to warrant a criminal investigation."

On March 3, 2009, the Boss Law Firm, APLC, counsel for Commonwealth Land Title Insurance Co., informed petitioners, after review of recorded instruments, that the 2003 foreclosure appeared to have been properly executed. The letter noted that petitioners had "not provided any documentation or evidence to substantiate any allegations that the legal requirements under the Trustee's Deed were not satisfied or that a bona fide purchaser for value did not acquire the Property upon Trustee's Deed."

In relation to the 2003 foreclosure of the mortgage on the residence, petitioners claimed $29,785 on Schedules A, Itemized Deductions, as a theft loss for both their 2004 and 2006 tax years.

The Wage Garnishment

On December 2, 1996, Mr. Nagel filed a complaint in the Superior Court of the State of California (superior court) for wrongful termination against Nature's Best, captioned Nagel v. Nature's Best, No. 772346.

On March 27, 1998, the superior court granted a motion for summary judgment filed by Nature's Best.

On May 26, 1998, Nature's Best filed a motion for $42,404 of attorney's fees.

On May 27, 1998, Mr. Nagel filed a notice of appeal from the superior court's March 27, 1998, summary judgment.

On August 14, 1998, the superior court ordered Mr. Nagel to pay Nature's Best $21,223.25 for attorney's fees.

From 1999 through 2001 Mr. Nagel was unemployed and the judgment against him remained unpaid. To collect the judgment previously obtained against Mr. Nagel, in 1999 Nature's Best began garnishing Mrs. Nagel's wages to the extent of Mr. Nagel's community property interest.

On March 12, 1999, Mr. Nagel filed with the superior court a claim of exemption from the Nature's Best garnishment. On May 3, 1999, Mrs. Nagel filed with the superior court a claim of exemption from the Nature's Best garnishment. On June 8, 1999, the superior court entered an order affirming the garnishment of Mrs. Nagel's wages as provided by law but excepting her exempt disposable earnings of $915 per month or alternatively, $457.50 per 2-week period.

On April 28, 2000, after petitioners filed a motion to reconsider the June 8, 1999, judgment, and after a February 25, 2000, hearing on the motion to reconsider, the superior court denied reconsideration of the June 8, 1999, judgment. The Nature's Best garnishment of Mrs. Nagel's wages continued from 1999 through 2001.

In September 2001, the California Fourth District Court of Appeals (appeals court) issued an opinion affirming the superior court's grant of summary judgment for Nature's Best as to five

causes of action but reversing it as to two causes of action. The appeals court reversed the grant of summary judgment as to: (1) The statute of limitations, and (2) whether workman's compensation was the sole available remedy. Nature's Best voluntarily stopped garnishment of Mrs. Nagel's wages when Nature's Best learned the Appeals Court had reversed as to some causes of action. Some of the amounts Nature's Best garnished were returned to petitioners.

In relation to the garnishment of Mrs. Nagel's wages, petitioners claimed $1,925 on Schedule A as a theft loss for their 2004 tax year and $434 as a Schedule A theft loss for their 2006 tax year.

Respondent issued notices of deficiency on September 24, 2008, determining that petitioners were liable for deficiencies of $3,667 in income tax for the 2004 tax year and $4,146 in income tax for the 2006 tax year and additions to tax under section 6651 of $100 for the 2004 tax year and $203.25 for the 2006 tax year for failing to file timely returns for the tax years at issue.

In response to the notices of deficiency, petitioners filed a timely petition with this Court.

OPINION

## I.   Theft Loss

Deductions are a matter of legislative grace, and the taxpayer must maintain adequate records to substantiate the amounts of any deductions or credits claimed.  Sec. 6001; INDOPCO Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs.  As a general rule, the Commissioner's determination of a taxpayer's liability in the notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is improper.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 165(a) allows a taxpayer to deduct any loss sustained during the taxable year that is not compensated for by insurance or otherwise.  Section 165(c)(3), which limits losses for individuals, allows an individual taxpayer to deduct losses of property arising from, inter alia, theft.  Theft includes but is not necessarily limited to larceny, embezzlement, and robbery. Sec. 1.165-8(d), Income Tax Regs.  It includes "any criminal appropriation of another's property to the use of the taker". Edwards v. Bromberg, 232 F.2d 107, 110 (5th Cir. 1956).  The amount of a casualty or theft loss is generally limited to the lesser of the property's reduction in fair market value or the property's adjusted tax basis.  Secs. 1.165-7(b)(1), 1.165-8(c), Income Tax Regs.  Petitioners bear the burden of proving both the

occurrence of a theft within the meaning of section 165 and the amount of the loss. See Rule 142(a); Welch v. Helvering, supra at 115.

For tax purposes, whether a theft loss has been sustained depends upon the law of the jurisdiction in which the loss occurred. Edwards v. Bromberg, supra at 111; Monteleone v. Commissioner, 34 T.C. 688, 692 (1960). The exact nature of a theft, whether it be larceny, embezzlement, obtaining money by false pretenses, or other wrongful misappropriation of property of another, is of little importance provided it constitutes a theft. Edwards v. Bromberg, supra at 111; see also sec. 1.165-8(d), Income Tax Regs.

Petitioners' alleged theft losses occurred in California. The California Penal Code provides the following definition of theft:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property * * * or obtains possession of money, or property * * * is guilty of theft. * * * [Cal. Penal Code sec. 484 (West 2010).]

A. The Foreclosure

Petitioners contend that losses of approximately $29,875 arose from an alleged illegal foreclosure action in 2003, which

they claimed as a theft loss on Schedules A for their 2004 and 2006 tax years.

This Court has previously questioned whether an illegal foreclosure action is a theft for purposes of section 165(c). See Johnson v. Commissioner, T.C. Memo. 2001-97. We need not decide this issue, however, because petitioners defaulted on their loan and have failed either to show that the foreclosure action was illegal pursuant to the deed of trust securing that loan or to substantiate the alleged theft loss. The Court is sympathetic to petitioners' economic problems and the need to annually pay property taxes without regard to employment status. But practical considerations would dictate that Mr. Nagel seek other gainful employment to assist Mrs. Nagel in her efforts to support the family and avoid foreclosure in lieu of spending excessive time and effort fruitlessly fighting the foreclosure, property taxes, and income tax obligations.

The record demonstrates that the foreclosure and sale of the residence were properly executed within the full force of California State and Federal Law. The legality of the foreclosure was confirmed by multiple sources, including the Office of Thrift Supervision and the Office of the District Attorney for Riverside County. In their brief it appears that petitioners are alleging that recording errors occurred during the foreclosure procedure that constituted criminal activity.

However, petitioners have not provided adequate evidence to support their claim that such errors occurred or if they did, that such errors constituted criminal activity.

Petitioners have also failed to substantiate properly their alleged theft loss from the foreclosure of the mortgage on the residence. They have provided no evidence to demonstrate the exact amount of their remaining debt at the time of the foreclosure or how the amount claimed relates to their adjusted tax basis in the residence. Accordingly, because petitioners have failed to prove either the occurrence of a theft within the meaning of section 165 or the amount of the alleged loss, we sustain respondent's determination with regard to the foreclosure.

B. The Wage Garnishment

Petitioners claimed $1,925 as a theft loss deduction for 2004 and $434 as a theft loss deduction for 2006 with regard to the garnishment of Mrs. Nagel's wages by Nature's Best. It appears from their brief and Mr. Nagel's testimony that petitioners are alleging the garnishment was illegal because it occurred without the proper legal procedures. Specifically, "under Code Civil Procedure 706051 and 052, its forbidden to do it if you have no disposable earnings or * * * where you have to pay taxes." However, the record demonstrates that a valid judgment was entered by the superior court on June 8, 1999,

affirming the garnishment of Mrs. Nagel's wages.  The garnishment continued until the Appeals Court reversed the superior court in case No. 772346.  At that time, Nature's Best, through its attorney Christopher A. Minier, immediately requested the Sheriff's Office to "stop this wage garnishment immediately and return all funds which you (the Sheriff's Office) are holding * * * to Louise Nagel."  Petitioners have not demonstrated to the Court that any of the actions by Nature's Best were illegal when taken.

Further, petitioners have not substantiated the amounts of their alleged losses.  From the evidence they presented, the Court is unable to determine how petitioners calculated their alleged theft losses from the garnishment of Mrs. Nagel's wages.  Mr. Nagel stated at trial that Nature's Best collected approximately "$23,000, $24,000" between 1999 and 2001, but petitioners never demonstrated how they arrived at the amounts they claimed as theft losses on Schedules A.  Under section 6001, it is a taxpayer's responsibility to maintain adequate records to substantiate the amounts of any deductions claimed.  Accordingly, petitioners have not met the requirements under section 165(c)(3), and we sustain respondent's determination with regard to the Nature's Best wage garnishment.

II.  Section 6651(a)(1) Additions to Tax

Respondent determined that petitioners are liable for additions to tax under section 6651(a)(1) for their 2004 and 2006 tax years.  We agree with respondent.

Section 6651(a)(1) imposes an addition to tax of 5 percent per month or a fraction of a month up to a maximum of 25 percent for failure to file a timely return unless it is shown that such failure is due to reasonable cause and not to willful neglect.

Petitioners argue that Taxpayer Advocate Service Caseworker Rey Soliz told petitioners he had "postponed any of our federal tax filing until we had been satisfied by the Ca. Franchise Tax Board information."  However, petitioners have introduced no additional evidence to support their assertion that they received valid extensions for filing their 2004 and 2006 Forms 1040.

Petitioners signed both their 2004 and 2006 Forms 1040 on December 2, 2007, and mailed them to respondent on December 3, 2007.  Petitioners have not introduced any evidence to demonstrate that their failure to file timely returns was supported by reasonable cause.  Accordingly, we conclude that petitioners are liable for the section 6651(a)(1) additions to tax for 2004 and 2006.

The Court has considered all of petitioners' contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.